UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WILCO MARSH BUGGIES & DRAGLINES, INC., *Plaintiff* <br><br> VERSUS <br><br> WEEKS MARINE, INC., *Defendant* | CIVIL ACTION <br> NO.  20-3135 <br><br> SECTION:  "J" (1) <br><br> JUDGE CARL J. BARBIER <br><br> MAGISTRATE JUDGE <br> JANIS VAN MEERVELD |

ORDER AND REASONS

Before the Court are Weeks Marine, Inc.'s Motion for Leave to Amend Final Invalidity Contentions or in the Alternative to Strike Certain Infringement Contentions (Rec. Doc. 62) and Wilco Marsh Buggies & Draglines, Inc.'s Motion to Strike Portions of Weeks Marine's Reply Memorandum (Rec. Doc. 69). Because the court finds that Weeks Marine did not violate its order, the Motion to Strike is DENIED. Because the court finds that Weeks Marine has established good cause, its Motion to Amend is GRANTED.

Background

This is a patent infringement case against a customer of the manufacturer of the alleged infringing  product: an amphibious vehicle. Wilco is a Louisiana company that specializes in the design and manufacture of marsh equipment and applications, including amphibious vehicles that are capable of performing excavation operations in water and on land. At issue in the present litigation is an amphibious vehicle covered by U.S. Patent No. 6,981, 801 ("'801 Patent") that operates on dry land, soft terrain, or while floating. The vehicle includes a chassis formed by two interconnected pontoon sections sized such that the chassis and all equipment will float. The pontoons are fitted with a track system providing propulsion to the vehicle. The chassis contains a

1

plurality of spuds that are deployed to a position extending the below the bottom of the pontoons to stabilize the vehicle for operations while floating.

According to Wilco, Weeks Marine relied on Wilco's amphibious vehicles for its excavation service contracts for years. Then Weeks purchased two amphibious excavators with spud-equipped supplementary pontoons manufactured by a Malaysian company, EIK Engineering SDN. BHD. ("EIK Engineering") through its U.S. Distributor, EIK International Corp. Wilco alleges that the EIK Engineering "Amphibious Excavator" series vehicles ("EIK Vehicles") infringe the '801 Patent.

On November 18, 2020, Wilco initiated the present action against Weeks Marine pursuant to the U.S. Patent Act, as amended by the Leahy-Smith America Invests Act, 35 U.S.C. §1, *et seq.* and the Declaratory Judgment Act, 28 U.S.C. §2201 for Weeks Marine's alleged intentional infringement and misappropriation of the '801 Patent. Wilco alleges that Weeks Marine is currently using EIK Vehicles and that because the EIK Vehicles practice certain claims of the '801 Patent, Weeks Marine is infringing on those claims of the '801 Patent. Wilco seeks recovery of trebled compensatory damages, reasonable attorneys' fees, interest, and costs, as well as a preliminary and permanent injunction.

Weeks asserts numerous defenses, including that the '801 Patent is invalid because it fails to satisfy one more of the requirements for patentability. Weeks Marine also asserts a counterclaim for a declaratory judgment that Weeks Marine has not and does not infringe any valid and enforceable claim of the '801 Patent and that one or more claims of the '801 Patent are invalid. Weeks Marine alleges that its counterclaim presents exceptional circumstances under 35 U.S.C. § 285 and it seeks an award of its reasonable attorneys' fees.

In June 2021, the District Court vacated the standard scheduling order that had been issued in this case and issued patent specific deadlines, including a Markman Hearing[1] set for February 9, 2022, and a deadline of 30 days after the court's Claim Construction Order for the parties to file their Final Infringement and Invalidity Contentions. Following the Markman hearing, the court issued its Order and Reasons on claim construction on March 21, 2022. A new scheduling order was issued and trial is set to begin on January 9, 2023. The deadline to complete discovery is November 15, 2022. Plaintiff's expert reports are due September 16, 2022. Although the Final Infringement and Invalidity Contentions are not in the record, there appears to be no dispute that those Contentions were timely exchanged on April 21, 2022.

On June 20, 2022, Weeks Marine filed the present motion seeking to amend its Final Invalidity Contentions to include newly discovered prior art—the amphibious vehicle MudMaster and several printed publications relating thereto—or, in the alternative, to strike Wilco's Final Infringement Contentions to the extent they raise new allegations that Weeks Marine's use of the Remu Oy "Big Float" amphibious excavator infringes on the '801 patent even though Wilco's complaint does not mention the Remu Oy vehicles and Wilco has not sought leave to amend its complaint.

Weeks Marine argues that it has shown good cause to amend its Final Invalidity Contentions. It submits that it was diligent in conducting a search for prior art because EIK hired a professional firm to conduct a search in 2019 and the results were provided to Weeks Marine. The firm did not discover the MudMaster. Weeks Marine submits that from the outset of this

---

[1] The court, and not the jury, must construe the meaning of the claims in the patent itself. Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996) ("[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court."). A court may construe the claims based on the submissions of the parties or may hold what is known as a Markman hearing to take evidence on the construction of the claims. See 1 Annotated Patent Digest § 3:16.

3

litigation, it engaged in diligent efforts to locate non-patent prior-art literature, which resulted in the discovery of the Clark 1983 publication on May 2, 2022, and, thereafter, the Parchure 1996 publication. Weeks Marine subsequently obtained additional information through David Binkley of DredgeMasters International, Inc. ("DMI"), the manufacturer of the MudMaster, and has included Binkley's declaration in support of its motion.

Weeks Marine further argues that the amendment is important because it is highly relevant to the validity of the '801 patent in light of the MudMaster's use of a ladder frame in lieu of a center hull section—it appears to argue that this qualifies as a chassis. Weeks Marine submits that if the amendment is not allowed, there is a risk of inconsistent rulings because its invalidity contentions in the related Texas litigation[2] include reference to the MudMaster. It argues that Wilco will not be prejudiced because the case is in the early stages.

Upon Weeks Marine's filing of the motion for leave, Wilco filed a motion to continue the submission date, arguing that it should be allowed to receive responses to the discovery requests it had sent regarding Weeks Marine's diligence. The court held a status conference to discuss the briefing schedule, at which time Weeks Marine expressed that an extended continuance would put the resolution of its motion for leave that much closer to the pretrial deadlines. Weeks Marine noted that Wilco had already scheduled the deposition of Binkley in the Texas litigation against HHM. Weeks also argued that diligence was of minimal importance because of the other factors weighing in favor of its motion. When asked whether Weeks opposed the continuance because it

---

[2] Wilco filed a patent-infringement suit against an EIK subsidiary in the Western District of Texas in 2019, but this suit was dismissed because the court found the subsidiary was not an alter ego of EIK. Wilco Marsh Buggies & Draglines, Inc. v. EIK Engineering SDN.BHD., No. 6:19-cv-0565. Wilco filed a patent-infringement suit against EIK in the Western District of Texas in 2020, but has not been able to serve EIK. Wilco Marsh Buggies & Draglines, Inc. v. EIK Engineering SDN.BUD., No. 6:20-cv-0570. And in February 2021, Wilco filed a patent-infringement suit in the Southern District of Texas against Houston Heavy Machinery, LLC ("HHM"), which also allegedly used EIK amphibious excavators that infringe on the '801 Patent. Wilco Marsh Buggies & Draglines, Inc. v. Houston Heavy Machinery, LLC, No. 4:21-cv-0616. HHM is represented by the same attorneys as Weeks Marine. Wilco did not oppose HHM's motion to amend its Preliminary Invalidity Contentions to include the MudMaster in late May 2022.

4

believed no discovery was necessary or whether it would prefer to respond to the discovery on a fast track, Weeks responded that it questioned whether it could respond to the discovery without disclosing work product. This suggested to the court that a discovery battle would follow the discovery responses. Wilco argued that diligence was of critical importance and expressed a concern that Weeks Marine would try to attach evidence of diligence to its reply memorandum because it had failed to provide evidence of diligence with its motion and that Wilco would be prejudiced. Weeks Marine agreed that it would prefer to be limited in its ability to present evidence in reply than to further delay its motion for leave. The court granted a short continuance to allow time for Wilco to prepare its opposition memorandum and ordered that "Weeks Marine shall not be allowed to submit additional evidence of its diligence in reply." (Rec. Doc. 66).

In opposition to the motion for leave to amend, Wilco argues that Weeks Marine cannot establish good cause for the late amendment most importantly because it has not shown its diligence. It further argues that Weeks Marine has failed to show the importance of the amendment. It says that based on its preliminary examination, the new "prior art" is cumulative of one or more prior art references that Weeks Marine already relies on. It insists that if the amendment would be allowed, it would be severely prejudiced because of the additional third party discovery that would need to be done and because the claim construction hearing has been withheld without Wilco having the benefit of knowing about the MudMaster.

Wilco further argues that there is no risk of inconsistent findings in the Texas litigation because Weeks Marine is not a defendant there and Wilco has provided an unconditional covenant not to sue Weeks Marine in the Texas litigation. Finally, Wilco argues Weeks Marine's "alternative" motion to strike is improper—it is not really in the alternative because Weeks Marine's proposed amended invalidity contentions are unrelated to Wilco's addition of allegations

5

regarding the Remu Oy equipment. In any event, Wilco insists its inclusion of those allegations in the Infringement Contentions without amending the complaint is appropriate because the fact that a different manufacturer's name appears on the devices being used by Weeks Marine does not make them exempt from Wilco's claims.

In reply, Weeks Marine argues that it has been diligent and that Wilco knows it. It submits that it was diligent in obtaining the results of the professional prior art search conducted on behalf of EIK. It disclosed this in its June 2019 Preliminary Invalidity Contentions. It points out that the MudMaster is non-patent prior art, which is notoriously hard to find. It submits that Wilco is well aware of Weeks Marine's continued internet searches for prior art because in October 2021 Weeks Marine disclosed that it had discovered the Wilco 2000 Vehicle on archived versions of Wilco's website. Apparently Wilco denied knowing anything about the vehicle in January 2022, but Weeks Marine obtained affidavits from the Internet Archive in March 2022 authenticating the Wilco 2000 Vehicle. Weeks Marine says it never stopped searching and discovered the MudMaster two weeks after serving its Final Invalidity Contentions when it located a reference to it in a 1983 technical report using a full text search of over 35 million texts on the Internet Archive that itself yielded ten thousand results. Weeks argues that it acted diligently when it discovered the MudMaster by promptly getting in touch with DMI and its Vice President David Binkley, obtaining technical reports and brochures, and submitting a FOIA request to the United States Army Corps of Engineers for authentic copies of the *Clark 1983* report and the *Parchure 1996* report (which Weeks Marine found two weeks after it located the 1983 report). Weeks notified Wilco of the prior art on May 19, 2022. Weeks adds that some of the delay in the hearing of this motion is Wilco's own fault in failing to respond to Weeks' requests for consent to the amendment despite its lack of opposition to a similar amendment in the Texas litigation against HHM.

Weeks further argues that the MudMaster prior art is so important it intends to move for summary judgment. It says that the voluminous charts attached to its motion demonstrate in granular detail how the MudMaster prior art anticipates and renders obvious the specific claims of the '801 patent.[3] Weeks argues that there is no undue prejudice to Wilco, pointing out that Wilco has already subpoenaed Binkley of DMI for a deposition to be held on August 4, 2022, in the Texas litigation.[4] It argues that it does not matter that the claim construction hearing has already been held because claim construction is an objective task and Wilco should not be able to change its claim construction based on prior art. Weeks argues that no continuance will be required, noting that Wilco's rebuttal expert report is not due until October 17, 2022.

Finally, Weeks provides further explanation of its "alternative" motion to strike. It argues that using infringement contentions to expand the complaint is improper and that if this court cannot find good cause for Weeks' amendments, it should similarly find no good cause for Wilco's attempt to expand the pleadings in April 2022 through its Final Infringement Contentions.

Wilco responded to the reply memorandum by filing a motion to strike. It argues that Weeks Marine has violated the court's order precluding the submission of evidence of diligence in reply. Wilco argues that although submitted in the form of attorney argument, all of the circumstances and information presented by Weeks Marine amounts to evidence and not a legal response. It insists that Weeks is in open contempt of the court's order during the status conference and asks that the diligence related portions of the reply be stricken and Wilco be awarded its attorneys' fees.

---

[3] The proposed amendment supplements and does not restate the existing Final Invalidity Contentions. The charts span nearly 500 pages.
[4] Weeks Marine notes that Wilco agreed at the status conference with the undersigned to set a briefing schedule for this motion that the deposition would count for both cases.

In opposition to the motion to strike, Weeks Marine submits that it was not its intent to circumvent the court's order. It represents that it believed the court sought to protect Wilco from any surprise that would be caused by additional evidence coming to light via the reply memorandum. It notes that it produced its discovery responses early—one day before Wilco's opposition memorandum. It submits that it thought it was proper to include information in its reply memorandum that was already of record and known to Wilco, such as the discovery of the Wilco 2000 Vehicle. To the extent the court determines that Weeks Marine violated the court's order, it asks the court not to issue sanctions because it did not engage in a clear affront to the court's authority. It notes that its reply memorandum included a footnote explaining that Weeks Marine did not believe the presentation of facts known to Wilco violated the court's order but that if it did, the presentation should be considered a proffer.

In reply, Wilco argues that Weeks Marine should prohibited not only from presenting evidence in reply, but also from presenting new arguments. It points out that some of the discovery referenced by Weeks Marine was produced in the Texas action. It insists that Weeks Marine failed to meet its burden of establishing diligence and that it is trying to circumvent the court's order. It questions why Weeks did not include this information in its motion if it already had it. Further, Wilco argues that the Texas case is irrelevant. It says that other than having the same counsel as in this case, the cases are completely unrelated. It argues that anything related to EIK is irrelevant to this lawsuit.

At oral argument, the court asked Wilco what it might have done differently had it had more time following Weeks Marine's discovery responses to file its opposition. It argued that it would have probed the things that were not said: it pointed out that Weeks Marine has not provided any information about what led them to go look for these publicly available documents. It suspects

8

that Weeks Marine renewed its search following the court's claim construction ruling. Wilco also argued that Weeks Marine failed to support its argument that non-patent information is difficult to find with any evidence. It argued that the primary prejudice it would suffer results from the lack of time to respond to the new invalidity contentions.

The parties also revealed that Wilco had cancelled the August 4, 2022, deposition of Binkley. Its counsel represented that Wilco had made a business decision to stop pursuing the Texas litigation. Indeed, it filed a motion to dismiss that case on July 21, 2022, four days after it moved to strike Weeks Marine's reply memorandum. Thus, it argued, there is no risk of an inconsistent verdict. Weeks Marine responded that it believes Wilco's decision to stop the Texas case represents the importance of the MudMaster as prior art.

Law and Analysis

1. *Motion to Strike Reply and Hold Weeks Marine in Contempt*

"Contempt is committed when a person 'violates an order of a court requiring in specific and definite language that a person do or refrain from doing an act.'" Matter of Baum, 606 F.2d 592, 593 (5th Cir. 1979) (quoting Baumrin v. Cournoyer, 448 F. Supp. 225, 227 (D. Mass. 1978)). "The judicial contempt power is a potent weapon which should not be used if the court's order upon which the contempt was founded is vague or ambiguous." Id.

The order at issue here required that "Weeks Marine shall not be allowed to submit additional evidence of its diligence in reply." It was issued as a compromise. Wilco wanted more time to conduct discovery into Weeks Marine's diligence. Weeks Marine wanted to proceed with minimal delay. Had additional time been provided for the discovery to play out, Weeks Marine would not have been limited in how it could address its diligence further in reply. Weeks Marine

9

ultimately responded to the discovery prior to Wilco's deadline to oppose—albeit only the day before.

Weeks Marine did not submit any evidence in support of its arguments in reply. However, it did raise new facts—without supporting affidavits—regarding its discovery of the Wilco 2000 and the fact that it found the MudMaster through a search of the Internet Archive. It also raised for the first time the argument that non-patent prior art is difficult to find. The court notes that it is not uncommon for parties to address one or more of the factors in support of amending the scheduling order in more detail in reply in response to a challenge in opposition. But in the face of the court's order, the inclusion of additional information arguably crossed the line.

However, the court finds Weeks Marine is not in contempt of court considering the actual text of the order in the minute entry—which prohibits only additional evidence, considering the compromise circumstances under which the order was issued, and considering that Weeks Marine provided its discovery responses in advance of Wilco's opposition deadline.

The court also declines to strike Weeks Marine's reply. In addition to the aforementioned reasons, Wilco did not indicate that it would have done anything differently with regard to the arguments raised by Weeks Marine in its reply had it had more time. It would have questioned whether Weeks had been searching continuously and if not, when and why it restarted its search. But Wilco has had the opportunity to point out that Weeks Marine did not provide answers to such questions. And it had access to the new factual information presented by Weeks Marine before it filed its opposition. The court finds it has not been prejudiced. The court will not strike Weeks Marine's Reply Memorandum.

### 2. *Standard to Amend Invalidity Contentions*

The District Court modified its scheduling order to set the deadline for the filing of Final Invalidity and Infringement Contentions. That deadline has now passed. The parties agree that when a party seeks to amend a scheduling order to make an out of time filing, that party must show "good cause." Fed. R. Civ. Proc. 16(b)(4); see S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA, 315 F.3d 533, 536 (5th Cir. 2003) ("We take this opportunity to make clear that Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired."); see also Reliance Ins. Co. v. Louisiana Land & Expl. Co., 110 F.3d 253, 257 (5th Cir. 1997)). "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" S&W Enterprises, L.L.C., 315 F.3d at 535 (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)); see O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1366 (Fed. Cir. 2006) (holding that diligence must be considered in determining whether good cause exists to amend infringement contentions). In determining whether good cause has been shown, courts consider four factors: the explanation for the failure to comply with the deadline, the importance of the amended filing, the potential prejudice in allowing the amended filing, and the availability of a continuance to cure such prejudice. See Reliance, 110 F.3d at 257.

No party has cited any reported case in the Fifth Circuit addressing the untimely amendment of invalidity contentions. The unreported cases that the parties have shared with the court demonstrate that—much like in the context of a pleading amendment—the analysis of whether good cause has been established is a case specific inquiry.

In one unreported case out of the Eastern District of Texas, the court found the defendant's "apparent lack of diligence" weighed against allowing an out of time amendment of its invalidity

contentions where the defendant began its search for prior art upon receipt of the plaintiff's infringement contentions, but it did not subpoena IBM for the IBM Simon material that it sought to add to its invalidity contentions until two months later—just days before its invalidity contentions were due. Uniloc 2017 LLC v. Google LLC, No. 2:18-cv-00493-JRG-RSP, 2019 U.S. Dist. LEXIS 206856, at *3-4 (E.D. Tex. Dec. 2, 2019). Nonetheless, the court granted the defendant leave to supplement its invalidity contentions because it found the material important and that the prejudice to the plaintiff would be minimal because the IBM Simon system was one prior art reference and because defendant had notified plaintiff of the IBM subpoena, disclosed the IBM Simon system in its original invalidity contentions, and provided the supplemental invalidity charts the same day it received the IBM production. Id. at *4-6. The court found that a continuance would not likely be necessary because months remained before claim construction and fact discovery would close and that, in any event, a continuance could be granted if needed. Id. at *6.

In another unreported Eastern District of Texas case, the court denied defendants' request to amend their invalidity contentions to add four new references to prior art three months after the deadline to file invalidity contentions. Innovative Display Techs. LLC v. Acer Inc., Civil Action No. 2:13-cv-00522-JRG, 2014 U.S. Dist. LEXIS 83196, at *7 (E.D. Tex. June 19, 2014). The defendants argued that despite their exhaustive efforts to locate prior art, they had only discovered the four new references in the month and a half before seeking to amend. Id. at *4. The court found that the fact that it took the defendants "more time beyond the original deadline to find these new arts, in and of itself, is no excuse for a late supplementation." Id. at *5. The court also found that defendants' conclusory assertion of importance was insufficient where the defendants had failed to explain the subject matter of the four new arts or how they would render the particular patent invalid. Id. at *6. Finally, the court found the plaintiff would be prejudiced because the

motion for leave to amend had been filed only two months prior to the claim construction hearing. Id. at *7. The court explained that "[a]lthough the Court does not base its claim construction on invalidity contentions, the parties' claim construction positions as a practical matter would be influenced by the scope and combination of the specific prior arts disclosed in invalidity contentions." Id. Thus the court found the plaintiff would be prejudiced in having to spend more time and resources to modify its existing claim construction. Id.

In contrast, the Northern District of Texas found good cause for an amendment to defendant's invalidity contentions three months after the deadline and shortly after the filing of claim construction briefs but before the deadline for plaintiff's claim construction response. Maxell Ltd. v. Apple Inc., No. 5:19-CV-00036-RWS, 2020 U.S. Dist. LEXIS 257203, at *5 (E.D. Tex. Feb. 24, 2020). The court found good cause "despite the relatively slight importance of the amendment and length of time between the initial invalidity contentions and amendment," because of the defendant's "diligence and excusable delay, as well as the as the lack of unfair prejudice to" the plaintiff. Id. at *12. In considering the delay in discovery of the prior art, the court noted that the defendant had hired an intellectual property law firm to conduct a prior art search and that the defendant argued that it had been difficult to identify the new prior art because it was a product that was sold twenty years earlier and because it was physical prior art—unlike patents and technical publications—there had been no database cataloguing such products and their characteristics. Id. at *6. Ultimately, a technical analyst working for defendant found a German website published by an individual camera enthusiast that contained information relating to old models of digital cameras. Id. at *3-4. From there, the analyst identified the Casio Camera as potentially relevant and searched available technical information and product literature to identify a product manual describing its technical features. Id. at *4. The court found the delay in discovery

of the prior art "can be expected even by a party conducting a proper investigation" and found the delay to be excusable. Id. at *7. The court recognized "some prejudice" to plaintiff because leave to amend was sought after its preliminary election of claim terms and just before its deadline to file its initial claim construction brief, but the court found this prejudice alleviated because plaintiff had notice of the prior art prior to its responsive briefing and the Markman hearing and because plaintiff did not allege any specific claim construction arguments that would be affected by the supplemental invalidity contentions. Id. at *11.

In an unreported case out of the Northern District of California, the court divided the "diligence" inquiry into two phases, "1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered." Positive Techs., Inc. v. Sony Elecs., Inc., No. C 11-2226 SI, 2013 U.S. Dist. LEXIS 11271, at *8 (N.D. Cal. Jan. 28, 2013). It found the defendants had shown reasonable diligence in both phases where defendants provided a detailed timeline showing they made reasonable efforts to discover the new art, where defendants argued that their renewed effort to search for prior art was prompted by representations of plaintiff in its opening brief and by the court's claim construction order disagreeing with one of the defendants' proposed constructions. Id. The court rejected plaintiff's suggestion that the defendant "must identify all relevant prior art references that may become relevant to all possible claim constructions." Id. at *10. The court also found that defendants had timely disclosed the new information to plaintiff. Id. at *11. Apparently, the plaintiff did not challenge the relevance of the newly discovered art, whether the request was motivated by gamesmanship, or whether it would be prejudiced. Id. The court granted the defendants' motion for leave to amend their invalidity contentions, finding no prejudice to the plaintiff because the

14

request had been made well before the discovery deadline and that amendment would advance the fair resolution of the case. Id. at *11-12.

In another unreported case in the Northern District of California, the court found the defendant had established good cause to amend its final invalidity contentions to add newly discovered prior art where the defendant had described its various investigation efforts in detail, had communicated with the plaintiff about its continued search for prior art, and had promptly produced the new references to the plaintiff, even where there had been an eight month delay between its discovery of the new prior art and when it sought leave to amend. Fujifilm Corp. v. Motorola Mobility LLC, No. 12-cv-03587-WHO, 2014 U.S. Dist. LEXIS 15006, at *10 (N.D. Cal. Feb. 5, 2014). The court found this time not insignificant, but concluded that "on balance, if there was any unjustified delay, it was not prejudicial." Id. The court noted that "the good cause requirement does not require perfect diligence." Id. at *12-13. The court found unpersuasive the plaintiff's argument that it would be prejudiced by the amendment because the claim construction order had already issued, but allowed the plaintiff to explain whether and why supplemental claim construction would be necessary. Id. at *18-19. The court noted that the case was in the early stages of discovery with six months until the discovery deadline and over eight months until initial and rebuttal expert reports were due. Id. at *19.

    3. *Analysis of Four Factors Here*

        a. *Explanation for Delay (Diligence)*

Weeks Marine relied primarily on the prior art search of a professional firm that had searched both patent and non-patent databases. Nonetheless, Weeks continued to search for non-patent prior art. These searches yielded the discovery of the Wilco 2000 Vehicle—which it disclosed to Wilco in October 2021—and the MudMaster in May 2022, the latter, shortly after the

deadline to file Final Invalidity Contentions. Weeks Marine submits that non-patent prior art, which cannot be found in patent databases, is difficult to find. Wilco did not agree with this characterization, but it did not present a basis for arguing otherwise. Further, once the first publication referencing the MudMaster was located, Weeks Marine quickly obtained additional information and informed Wilco of its discovery and its intention to amend its Final Invalidity Contentions on May 19, 2022, less than a month after the deadline.

Although Weeks Marine has not argued or provided evidence to show that it continuously searched for non-patent prior art from the time the lawsuit was filed, the court finds that its efforts to locate the new prior art and to bring the new prior art to Wilco's attention amount to sufficient diligence. And that is enough. Perfect diligence is not required. Fujifilm, 2014 U.S. Dist. LEXIS 15006, at *10. The court finds the diligence factor weighs slightly in favor of allowing the amendment.

      *b. Importance*

The parties dispute the importance of the proposed amendment. While it is difficult for the court to assess the importance at this stage, the extensive description and charts provided by Weeks Marine indicates that there is at least a plausible basis for its assertions. And this distinguishes the present case from Innovative Display, where the defendant relied on conclusory assertions of importance. 2014 U.S. Dist. LEXIS 83196, at *6. Weeks Marine believes the prior art is so significant it will support a forthcoming motion for summary judgment. It also argues that the MudMaster will be easier for the jury to understand. On this point, the court agrees. To the untrained eye of a non-expert such as the undersigned, the MudMaster appears to bear similarities to the '801 Patent. Importantly, regardless of the merits of Weeks Marine's invalidity contentions based on the MudMaster, the jury is more likely to reach a just result with all the evidence before

it than if the MudMaster were excluded. To the extent the MudMaster is cumulative of other prior art as Wilco argues, the parties may address whether certain evidence should be excluded on that basis as they prepare for trial. The court finds that the importance of the proposed amendment weighs in favor of allowing it.[5]

    c. *Prejudice*

The potential prejudice here has two components:  whether Wilco will have enough time to conduct necessary discovery and whether the fact that claim construction has already occurred prejudices Wilco.

The court finds no prejudice on the discovery prong. Wilco has already begun conducting discovery because the MudMaster was incorporated into the Texas litigation. The deposition of Binkley was set to occur on August 4, 2022. In addition to the fact that Wilco itself cancelled the deposition, there is no reason to believe that it could not be rescheduled. Wilco's rebuttal expert reports will not be due until October 17, 2022. The discovery deadline is December 13, 2022. While Wilco would have liked more time to prepare, the court notes that it has been on notice of the new prior art since May 2022. It waited weeks to respond to Weeks Marine's request for consent to the filing—and considering that Wilco did not oppose the amendment in the Texas case against HHM, the court does not find it unreasonable that Weeks Marine awaited a reply, especially when the local rules require the moving party to indicate whether any party opposes its

---

[5] The court notes that at the time the Motion for Leave to Amend was filed, the risk of inconsistent verdicts between this and the litigation in Texas against HHM was also a concern:  what if the Texas court found the '801 patent invalid based on the MudMaster and the court here considered the patent without the MudMaster and found the patent valid? But after the Motion for Leave was filed and shortly before filing its opposition memorandum, Wilco signed a covenant not to sue and later moved to dismiss its case against HHM. Like Weeks Marine, the court questions whether this could be an indication of the importance of the MudMaster. Ultimately, though, the court concludes the risk of inconsistent verdicts no longer bears on the importance factor.

motion. The court concludes that Wilco will not be prejudiced in preparing its response to the new prior art.

The court next addresses prejudice arising from the presentation of new prior art following the claim construction ruling. At oral argument, Wilco conceded that claim construction occurs independently of invalidity contentions, but pointed out that as a practical reality, counsel always has invalidity contentions in mind when they argue claim construction. Two of the Northern District of Texas cases cited by the parties in this matter found that the disclosure of prior art after claim construction will prejudice the plaintiff. Innovative Display, 2014 U.S. Dist. LEXIS 83196, at *7; Maxell, 2020 U.S. Dist. LEXIS 257203, at *11. In Innovative Display, the prejudice factor weighed against allowing the amendment. But in Maxell, the court found the prejudice minimal where defendant had the prior art before its response to the defendant's claim construction argument was due.

Here, however, the court's scheduling order allowed Final Invalidity Contentions to be filed 30 days after the claim construction order. Thus, the same potential prejudice resulting from a post-claim-construction addition would have occurred even if Weeks Marine's addition of the MudMaster had been timely. And Wilco cannot now argue that the addition of new invalidity contentions would have been improper in April 2022 when it added new infringement contentions related to the Remu machine in its April 2022 Final Infringement Contentions. The court finds this prejudice does not weigh against allowing the post-deadline amendment.

### d. Availability of a Continuance

The district court controls whether a continuance would be allowed. Here, it appears that no continuance will be necessary.

e. *Conclusion Regarding Amendment*

Having found that all factors weigh in favor of allowing the amendment, the court finds that Weeks Marine has established good cause to amend the scheduling order to allow its out-of-time amendment to its Final Invalidity Contentions.

Conclusion

For the foregoing reasons, Wilco's Motion to Strike (Rec. Doc. 69) is DENIED, and Weeks Marine's Motion to Amend (Rec. Doc. 62) is GRANTED. Weeks Marine's Amended Final Invalidity Contentions shall be deemed the operative Final Invalidity Contentions.

New Orleans, Louisiana, this 2nd day of August, 2022.

_____<br>
Janis van Meerveld<br>
United States Magistrate Judge