UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WILCO MARSH BUGGIES AND
DRAGLINES, INC.

VERSUS

WEEKS MARINE, INC.

CIVIL ACTION

NO. 20-3135

SECTION: "J"(1)

## ORDER & REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 110)** filed by Defendant Weeks Marine, Inc. and an opposition (Rec. Doc. 127) filed by Plaintiff Wilco Marsh Buggies & Draglines, Inc as well as a reply (Rec. Doc. 143). Also before the Court is Plaintiff's *Motion in Limine to Strike and Exclude Evidence* **(Rec. Doc. 126)** and an opposition (Rec. Doc. 135) filed by Defendant as well as a reply (Rec. Doc. 141). Having considered the briefs, the record, and the applicable law, the Court finds that the motions should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

The patented technology at issue is Plaintiff's '801 Patent, which is an amphibious vehicle with excavation capabilities. (Rec. Doc. 1, at 3). Amphibious vehicles, also known as marsh buggies, help oil and gas companies work both on land and in marshy terrain. (Rec. Doc. 32, at 2). The typical structure of marsh buggies involves two pontoons connected to a center platform, which allows the technology to not sink into low-lying, soft marsh ground. *Id*. However, with rising water levels, marsh buggies have become less useful, as they are more likely to sink in higher water. *Id*.

1

To counter the difficulties presented with climate change, Wilco developed the '801 Patent, which incorporates spud barges to allow the marsh buggies to float in high water in addition to working on land and in marshes. *Id.* at 2-3. Spud barges utilize pilings that extend down to the bottom of the water allowing the platform to stay buoyant even with heavy machinery on top. *Id.*

After Plaintiff patented this technology in 2003, a Malaysian company, EIK Engineering ("EIK"), allegedly began selling copies of Plaintiff's amphibious vehicle in the U.S. market. (Rec. Doc. 1, at 4-5). The copies allegedly consist of an amphibious vehicle that has a pair of pontoons and spud system, which Plaintiff contends was distinct and novel to their '801 Patent. *Id.* Plaintiff has struggled to serve, contact, and litigate with EIK. Consequentially, Plaintiff sued EIK's customers instead, including the Defendant in this case. (Rec. Doc. 32, at 5).

Plaintiff filed the instant suit in this Court on November 18, 2020, seeking a declaration of infringement and damages. Defendant Weeks Marine. Inc. ("Weeks") has moved for summary judgment, asserting that the '801 Patent is invalid.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the

record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may

3

not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

Defendant Weeks Marine. Inc. ("Weeks") has moved for summary judgment, arguing that the Asserted Claims of Plaintiff Wilco Marsh Buggies & Draglines, Inc.'s ("Wilco's") patent are invalid because they either lack novelty under 35 U.S.C. § 102 or because they would have been obvious to a person of ordinary skill in the art ("POSITA") at the time of the invention under 35 U.S.C. § 103. (Rec. Doc. 110-2, at 5). In its opposition, Wilco argues that the instances of alleged prior art supplied by weeks do not anticipate the '801 patent. Wilco also argues in part that certain elements of Weeks' proffered summary judgment evidence are inadmissible. (Rec. Doc. 127, at 13, 14). Therefore, the Court must first determine what evidence can be considered before addressing the merits of Weeks' motion for summary judgment.

## I.    Disputed Summary Judgment Evidence

Wilco's opposition references its *Motion in Limine to Exclude the MudMaster References* **(Rec. Doc. 126)**. Wilco states that the exhibits discussed therein should be excluded and not considered when ruling on summary judgment. (Rec. Doc. 127, at 13). Therefore, the Court must herein address Wilco's motion in limine.

### A. The Declaration of Patrick Hudson

Wilco first argues in its opposition to Weeks' Motion for Summary Judgment that the expert report of Patrick Hudson should be excluded for the reasons stated in its Motion to Exclude the Expert Testimony of Patrick Hudson (Rec. Doc. 120). However,

the Court denied Wilco's request to file this motion because it was untimely. (Rec. Doc. 134). Therefore, the Court finds that the Declaration of Patrick Hudson is admissible evidence and can be used in determining Weeks' motion for summary judgment.

**B. MudMaster References**

Wilco next argues that all references to the MudMaster should be excluded because they lack authenticity, constitute hearsay, and are not eligible as prior art. (Rec. Doc. 127, at 13). The MudMaster is an alleged instance of prior art that Weeks alleges anticipated the claimed invention of the '801 patent.

Wilco moves to exclude any references to Record Document numbers 110-9, 110-10, 110-11, 110-13. 110-14, 110-15. 110-16, 110-17, 110-18, 110-19, and 110-20. (Rec. Doc. 126, at 1). These exhibits are referred to by various exhibit numbers in different memoranda and filings. Therefore, where possible, the Court will refer to these exhibits by their record document numbers.

a.  <u>110-9, 110-10, and 110-11 Parchure 1996, Clark 1983, and the FOIA Response</u>

Wilco has moved to strike two U.S. Army Corps of Engineers publications titled "Parchure, Trimbak Mukund. Equipment for Contaminated Sediment Dredging. US Army Engineer Waterways Experiment Station, 1996" ("Parchure 1996") and "Clark, Gene R. Survey of Portable Hydraulic Dredges. US Army Engineer Waterways Experiment Station, 1983 ("Clark 1983"). Wilco has also moved to strike a FOIA Response which produced these documents. Weeks relies on these publications in their *Motion for Summary Judgment* as evidence that MudMaster

prior art was available to the public prior to the '801 Patent's effective filing date. (Rec. Doc. 110-2, at 9). Wilco argues that these publications should be excluded because they are not properly authenticated, constitute inadmissible hearsay, and are not relevant.

Federal Rule of Evidence rule 901 requires that in order for an exhibit to be admitted, it must be authenticated, meaning that the party offering the exhibit must produce evidence which establishes that the exhibit is what the proponent says it is. Wilco argues that Parchure 1996 and Clark 1983 should be excluded because they were obtained from an Internet Archive which is not self-authenticating. (Rec. Doc. 126-1, at 3, 9-10).

Although Wilco points to an email from Weeks' counsel stating that the Clark 1983 and Parchure 1996 were "located" using the online database (Rec. Doc. 126-1, at 3), the actual documents themselves were obtained from the ERDC Library of the U.S. Army Corps of Engineers (Rec. Doc. 135, at 11). Therefore, Weeks asserts that both Clark 1983 and Parchure 1996 are properly authenticated in accordance with Fed. R. Evid. 901(b)(7) which provides that a document may be authenticated with evidence that shows it was recorded in a public office. Wilco asserts that the ERDC Library is not a public office at all, although they do not cite any law or cases to this effect. (Rec. Doc. 141, at 3). The Court could not locate nor did either of the parties provide any Fifth Circuit precedent directly addressing what constitutes a public office for the purposes of Rules 901(b)(7) or 803(8). However, the ERDC Library is

run by the Army Corps of Engineers and is located on a military base. Therefore, the Court finds that it is a public office.

Wilco also asserts that Clark 1983 and Parchure 1997 should be excluded because they are hearsay. (Rec. Doc. 126-1, at 6, 10). However, neither of these exhibits is being introduced for the truth of the information asserted in the publications. Rather, they are being introduced to show that prior art was publicly available prior to the '801 Patent's critical date. Therefore, these documents are not hearsay at all.

Finally, Wilco also attempts to argue that Clark 1983 and Parchure 1996 should be excluded because they do not show that they were publicly available prior to the '801 Patent's critical date as is required by 35 U.S.C. § 102. Weeks' opposition properly characterizes this as a relevancy objection, although Wilco does not name it as such. (Rec. Doc. 135, at 12). Wilco argues that there is no affidavit from a librarian attesting to the availability date of these publications nor is there an identifiable date stamp showing when the document was deposited and indexed. (Rec. Doc. 126-1, at 6). However, the FOIA response (Rec. Doc. 110-11) establishes the dates on which both Clark 1983 and Parchure 1996 were catalogued in the library archive. The records indicate that a physical copy of Clark 1983 was entered into the library on August, 16, 1983 (Rec. Doc. 135-2) and that a physical copy of Parchure 1996 was entered into the library on November 6, 1996. (Rec. Doc. 135-3).

In its reply to Weeks' opposition to the motion in limine, Wilco argues that the FOIA letter itself is inadmissible hearsay which therefore cannot be used to show

that these documents were publicly available. (Rec. Doc. 141, at 3). Federal Rule of

Evidence rule 803(8) states that evidence will not be excluded as hearsay if:

> (A) it sets out: (i) the office's activities; (ii) a matter observed while
> under a legal duty to report, but not including, in a criminal case, a
> matter observed by law-enforcement personnel; or (iii) in a civil case or
> against the government in a criminal case, factual findings from a
> legally authorized investigation; and (B) the opponent does not show
> that the source of information or other circumstances indicate a lack of
> trustworthiness.

Wilco argues that the FOIA response letter was not prepared as part of the

regular record keeping activities of a public office, was not prepared pursuant to a

legal duty, and does not contain factual findings from a legally authorized

investigation. (Rec. Doc. 141, at 2). Furthermore, Wilco argues that the military

base which houses the ERDC Library is restricted, and therefore, even if Clark 1983

and Parchure 1996 were published there as is detailed in the FOIA response, a

POSITA would have been unable to obtain these documents. (Rec. Doc. 141, at 3).

As discussed previously, the ERDC Library is a public office, and the FOIA

response was prepared in accordance with a legal duty under the Freedom of

Information Act to fulfill such requests. Furthermore, the records search conducted

to locate these documents and the dates they were entered into the library is a

legally authorized investigation, even if it was merely a quick records search.

Therefore, the Court finds that the FOIA Response meets the requirements of Rule

803(8) and is admissible. Wilco is unable to successfully negate the indicia of

trustworthiness demonstrated by these exhibits. Therefore, they are deemed

admitted.

b.  Declaration of David Binkley dated May 19, 2022

Wilco also moves to exclude the May 19, 2022 Declaration of David Binkley from evidence. (Rec. Doc. 126-1, at 10-11). However, Weeks has stated that they do not intend to proffer this declaration as a trial exhibit. (Rec. Doc. 135, at 15 n.7). Furthermore, Weeks does not refer to this declaration in their Motion for Summary Judgment. Rather, they refer to Mr. Binkley's November 3, 2022 deposition. To the extent that Wilco implies that Mr. Binkley's deposition testimony should also be excluded, the Court finds that Wilco has not shown that Mr. Binkley does not have personal knowledge of the record keeping practices of DMI within the instant Motion to Strike. Therefore, Wilco's request to strike the May 19th Declaration is moot, and any implied request to strike the November 3rd Declaration is denied**.**

c.  110-13, 110-14, 110-15, 110-16: DMI Brochures

Wilco next moves to strike the following DredgeMasters International, Inc. documents: (1) DredgeMasters International Inc., Technical File 80112 [Brochure], 1987 ("MudMaster Technical File 80112") (2) DredgeMasters International Inc., MudMaster [Brochure], 1987 ("MudMaster Brochures") (3) DredgeMasters International Inc. [Brochure], 1987 ("DredgeMasters General Brochure") under Fed. R. Evid. 602 and 901.  (Rec. Doc. 126-1, at 13). Wilco argues that these exhibits cannot be properly authenticated because no one with any personal knowledge can attest to its creation, dissemination, or public availability. (Rec. Doc. 126-1, at 16).

Weeks argues that this technical file constitutes a business record under Rule 803(6) and an ancient document under 803(16) which applies to statements in

documents prepared prior to January 1, 1998 and whose authenticity is established.

Weeks argues that the authenticity of the brochure has been established by Mr.

Binkley who testified that he was aware of the brochures when he started working

at DMI in 1987 and personally distributed them to customers at a trade show and

to customers who visited the DMI office. (Rec. Doc. 135, at 18). Mr. Binkley also

testified that he had personal knowledge of the record keeping system at DMI and

knew that the marketing materials were stored in both digital and physical format.

*Id.* at 19. Because Mr. Binkley can testify from personal knowledge as to the

existence of the brochure and that it is what it is purported to be, the document is

properly authenticated and is admissible.

d. <u>Documents identified as Exhibits A – H in Dr. Patrick Hudson's
   Supplemental Invalidity Report dated November 4, 2022 ("Collaborative
   References")</u>[1]

The Collaborative References refer to:

(i)     Exhibit A- Assembly Disassembly Instructions – Model
        AHP-250SM ("the MudMaster Assembly-Disassembly
        Instructions")
(ii)    Exhibit B- Shipping Weights and Dimensions of Major
        Components – Model AHP-250SM
(iii)   Exhibit C- Trunnion Assembly
(iv)    Exhibit D- Track System Operation – Model AHP-250SM
(v)     Exhibit E- 12-22-80 LEI Sales Contract
(vi)    Exhibit F- 12-22-80 LEI Sales Contract – As-Sold Specs
(vii)   Exhibit G- Feb. 2, 1981 Inter-Office Memorandum re.
        Amphibious Dredge at ConExpo
(viii)  Exhibit H- 3-22-93 PSI Engineering Sales Contract

---

[1] The corresponding record document numbers in Weeks' Motion for Summary Judgment are Rec. Doc. 110-117 (Exhibit A), Rec. Doc. 110-118 (Exhibit D), Rec. Doc. 110-119 (Exhibit E), and Rec. Doc. 110-120 (Exhibit G).

These exhibits are intended to show that a MudMaster sale had occurred prior to the '801 Patent's effective date and that this sale contained all the limitations expressed in that Patent. Wilco argues that the Collaborative References should be excluded because they cannot be authenticated and constitute inadmissible hearsay. (Rec. Doc. 127, at 14). Wilco argues that Mr. Binkley cannot authenticate these documents because he was not employed at DMI until 1987, seven years after the alleged sale. (Rec. Doc. 126-1, at 23). Furthermore, Wilco argues that Weeks fails to offer any direct evidence that the Collaborative References were publically accessible prior to June 3, 2003. *Id.* at 22. Weeks again argues that these documents are admissible under the business records exception in Fed. R. Evid. 803(6) and as ancient documents under 803(16).

Wilco does not dispute that any of the Collaborative references are ancient documents created prior to January 1, 1998. Instead, Wilco argues in its reply that these documents "must first clear the hurdle of FRE 803(6) to be authenticated." (Rec. Doc. 137-2, at 9). The hearsay exception for ancient documents does not bear some sort of double requirement of being both ancient and a business record. Instead Rule 803(16) is its own exception to the hearsay rule. There is no requirement for ancient documents to meet two unrelated hearsay exception to be authenticated. In fact, Rule 901 provides that ancient documents can be authenticated if they are (1) in a condition that creates no suspicion about their authenticity (2) were in a place where, if authentic, they would likely be; and (3) are at least twenty years old when offered. Wilco provides no evidence that would call

into question the authenticity of these exhibits, nor does it suggest that they were kept in a suspicious place or are younger than twenty years old. Furthermore, the Fifth Circuit has repeatedly emphasized that the standard for authentication is not burdensome. *See United States v. Ceballos,* 789 F.3d 607, 618 (5th Cir. 2015). A proponent of evidence does not need to conclusively prove its authenticity. Rather, the proponent nearly needs to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The Court finds that the testimony of Mr. Binkley is sufficient to authenticate these ancient documents.

Wilco also argues that these exhibits should be excluded because they do not constitute publicly available prior art. (Rec. Doc. 126-1, at 20). Wilco asserts that "Weeks offers no direct evidence from anyone with personal knowledge attesting that the Collaborative References were made available to the public" prior to the filing date of the '801 Patent. (Rec. Doc. 126-1, at 21). Wilco also argues that the Collaborative References are not printed publications under 35 U.S.C. § 102. A document is publicly accessible when "has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it and recognize and comprehend therefrom the essentials of the claimed invention without need of further research or experimentation." *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1333 (Fed. Cir. 2009) (internal citation and quotation omitted).

Weeks argues that these DMI documents are relevant as prior art because they are either printed publications under 35 U.S.C. § 102, or because they are evidence which establishes that the MudMaster was in public use or on sale prior to the '801 Patent's effective date and "it embodied the claimed invention, thereby qualifying the machine itself as an individual prior art reference under 35 U.S.C. § 102." (Rec. Doc. 135, at 24).

In particular, Wilco urges that Exhibits E, F, and G be excluded because they were all created prior to the time that Mr. Binkley started working at DMI and are therefore outside of his personal knowledge. (Rec. Doc. 126-1, at 23). However, Wilco cannot show that Mr. Binkley was unfamiliar with the record keeping practices at DMI. In fact, Binkley testified that it was regular practice at DMI to create sales invoices such as those in Exhibits E and F. Wilco cannot show that these documents were not kept and stored in the way that would be expected by DMI's normal record keeping practices. Because, Binkley is a qualified custodian of these records, because they are all older than twenty years old, and because they bear sufficient indicia of trustworthiness that they are what they are purported to be, the Collaborative references are deemed authenticated and admissible under Rule 803(16).  Therefore, all of the evidence challenged by Wilco's *Motion in Limine to Strike and Exclude Evidence* **(Rec. Doc. 126)** is deemed admitted, and the motion is **DENIED**.

## II.   <u>Weeks' Motion for Summary Judgment</u>

Turning now to the merits of Weeks' *Motion for Summary Judgment* **(Rec. Doc. 110)**, the Court must evaluate whether claims 1-5 and 9-15 of U.S. Patent No. 6,918,801 ("the '801 Patent") are invalid because they either lack novelty or because they would have been obvious to a person of ordinary skill in the art at the time of the invention. A patent is presumed valid, and invalidity must be proven by clear and convincing evidence. *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986).

### a.  Novelty

Under 35 U.S.C. § 102, patents should not be issued if the patent was anticipated, or if "patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."[2] To prevail on a claim that a patent is invalid because it has been anticipated, the claimant must prove by clear and convincing evidence that "the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Advanced Display Systems, Inc. v. Kent State University*, 212 F.3d 1272, 1282 (Fed. Cir. 2000). Additionally, to fully anticipate a claimed invention, the prior art must be "enabling." To be enabling, a person of ordinary

---

[2] Because the patent at issue was filed prior to March 16, 2013, pre-America Invents Act ("AIA") law governs this case.

skill in the art must be able to make or use the claimed invention without undue experimentation based on the disclosure of that particular document. *In re Morsal*, 713 F.3d 104, 110 (Fed. Cir. 2013).

Weeks points to three alleged instances of prior art that anticipate the claims of the '801 Patent: the MudMaster, Harada, and Zong. Weeks is entitled to summary judgment if any of these three bear no difference between the claimed invention and the referenced disclosure. (Rec. Doc. 110, at 15).  In other words, if there is even one difference between any of these machines and the '801 Patent, summary judgment must be denied.

### 1. MudMaster

Weeks points to the 1980 sale of the MudMaster from Dredgemasters, Inc. to Latina Export & Import, Inc. as a sale that invalidates the '801 Patent. Therefore, Weeks must show by clear and convincing evidence that this sale occurred and that each claim of the '801 patent can be found in the Mudmaster. As addressed above, the Court finds that the DMI sales documents (Rec. Docs. 110-17, 110-18) are admissible. However, Weeks must prove not only that the sale occurred, but also that each limitation of the asserted claims existed in that particular sale.

Wilco asserts that Weeks has failed to establish that the MudMaster anticipated each limitation of the '801 Patent because "Weeks inappropriately relies on more than seven (7) references relating to MudMaster dated between 1983 and 1996" which were all created after the sale to demonstrate the features of the 1980 product and because "Weeks' attempt to utilize multiple references to demonstrate

invalidity by anticipation is a violation of the fundamental rule that a single reference must disclose every element of the challenged patent." (Rec. Doc. 127, at 16). Furthermore, Wilco argues that none of these references are contemporaneous with the 1980 sale, and therefore there is no way to prove that the 1980 machine contains each and every limitation of the asserted claims of the '801 Patent. (Rec. Doc. 127, at 17).

The Federal Circuit has explained that in order to conclusively anticipate a patent, every element of a claimed invention must be contained within a single prior art reference. *Advanced Display Systems, Inc.*, 212 F.3d at 1282. It is possible for extraneous documents to be considered if they are "incorporated by reference," meaning that the host document must identify with detailed particularity what specific material it incorporates and clearly indicate where the material is found in the various documents." *Id.* "If incorporation by reference comes into play in an anticipation determination, the court's role is to determine what material in addition to the host document constitutes the single reference. The factfinder's role, in turn, is to determine whether that single reference describes the claimed invention." *Id.* In its motion for summary judgment, Weeks does not identify where if at all their MudMaster references are incorporated into one another so that they may be considered one reference. Therefore, the Court cannot say as a matter of law that these documents constitute one instance of prior art which anticipates the '801 Patent.

16

Because the bar for holding a patent invalid is clear and convincing evidence, and because all inferences in resolving a motion for summary judgment must be made in favor of the non-movant, the Court finds that there is a genuine issue of material fact as to whether the sale of the MudMaster teaches each and every limitation of the '801 Patent.

2. <u>Harada</u>

Weeks also asserts that Harada (Japanese Publ. No. JPH0654018B2) anticipates the claims in the '801 Patent. Wilco argues that Harada "does not teach a device which can move on land as required by claims 1, 9, and 12, and it fails to disclose an operable spud system as required by claims 1, 9, and 12." (Rec. Doc. 127, at 18). Wilco argues that "Harada fails to provide an enabling disclosure of "a track system disposed on said pontoons and adapted to provide propulsion to the vehicle when moving on land or in water," as recited in claims 1 and 12 of the '801 Patent. (Rec. Doc. 127, at 19). Wilco argues that the cleats on the track system of Harada would become too clogged with mud to properly operate, and therefore render the Harada a non-enabling reference. *Id.* Wilco cites to the expert testimony of William T. Bennett to support this assertion that the track system would not operate properly. Weeks has moved to strike certain portions of Bennett's testimony related to his opinions on copying and either strike or restrict his testimony where it deviates from this Courts *Markman* hearing findings relating to the "connected to /attached to conflict". **(Rec. Doc. 109, at 10).** However, because neither of these topics is necessary to decide the Motion for Summary Judgment, the Court will defer on

addressing Weeks' arguments concerning the scope of Bennett's testimony. Therefore, the Court finds that there is a genuine issue of material fact as to whether the Harada is enabling and therefore fully anticipates the '801 Patent. Because the Court finds a genuine issue of material fact as relating to claims 1 and 12, it is unnecessary to address Weeks' other contentions relating to Harada.

   3.  <u>Zong</u>

Weeks also argues that the disclosed apparatus of Zong discloses each and every limitation of the asserted claims. (Rec. Doc. 110, at 10). However, Wilco again points to a genuine issue of material fact regarding whether Zong provides enabling disclosure relating to is track system in light of claims 1 and 12 of the '801 Patent. (Rec. Doc. 127, at 21). Similar to Harada, Wilco's expert, William Bennett, opines that Zong's track system is not fully enabling because it has "insufficient driving force provided by the track system" to free the machine from deep mud. *Id.* Bennett points to Zong's unique "walking spuds" that move the machine through the marsh when the tracks lose traction as evidence that the track system alone would be insufficient. *Id.* Wilco and Weeks have both submitted expert testimony regarding whether or not Zong fully anticipates the '801 patent. Therefore, the Court finds that there is a genuine issue of material fact related to Zong, and the Court has no need to evaluate Weeks' other claims relating to Zong in this Order.

Finally, the sheer volume of evidence submitted by both parties in this case weighs against summary judgment. Both sides have introduced competing testimony and evidence as to the validity of the '801 Patent and whether it was

infringed. Therefore, because the standard for invalidating a patent for lack of novelty is clear and convincing evidence, the Court cannot conclude that Weeks is entitled to judgment as a matter of law.

### b.  Obviousness

Weeks alternatively argues that summary judgment should be granted because the claimed invention would be obvious to a person of ordinary skill in the art to which the claimed invention pertains under 35 U.S.C. § 103. "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007). However, "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *Id.*

Weeks asserts that Conventional Amphibious Excavators were in public use or on sale in the U.S. more than a year prior to the priority date of the '801 Patent. (Rec. Doc. 110, at 27). However, these excavators presented a risk of overturning while floating because using the backhoe would shift the center of gravity. *Id.* Weeks also points out that spud barges existed prior to the '801 Patent. The spuds allow for stabilization and work to prevent capsizing. Weeks asserts that a POSITA would have found it obvious to combine the pre-existing amphibious excavators with spuds in the same way that the MudMaster, Harada, and Zong references teach. *Id.* at 28.

Wilco argues however that Weeks is merely engaging in hindsight bias by concluding that because the elements of the claimed invention were combined it must have been obvious to do so. (Rec. Doc. 127, 23-24). Wilco also asserts that Weeks did not address the secondary considerations or objective evidence of non-obviousness. Courts are required to consider objective evidence of non-obviousness including the commercial success of the invention, a long-felt but unsolved need addressed by the invention, a failure of others to solve the problem which the invention addresses, and the copying of the invention by others. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). Although these factors are called "secondary" they are not secondary in importance, but merely secondary in the analysis. *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987).

Wilco is correct in asserting that Weeks does not address any of the secondary considerations required in the obviousness analysis. Wilco submits evidence of the profits earned from sales of its claimed invention (Rec. Docs. 127-2 – 127-10), testimony that the machines used prior to this device bore significant disadvantages suggesting a long-felt need for improvement (Rec. Doc. 127-1, at ¶¶ 6-11), and circumstantial evidence that EIK could have copied Wilco's product in creating their machines which were subsequently sold to Weeks. *Id.* at ¶¶ 19-22. Therefore, because Wilco has produced evidence suggestive of the non-obviousness of the '801 Patent, and because all inferences must be resolved in favor of the non-moving party, the Court finds that there is a genuine issue of material fact as to the obviousness of the '801 Patent.

20

## <u>CONCLUSION</u>

Accordingly, Wilco's *Motion in Limine to Strike and Exclude Evidence* **(Rec. Doc. 126)** is hereby **DENIED**. Weeks' *Motion for Summary Judgment* **(Rec. Doc. 110)** is also **DENIED**.

New Orleans, Louisiana, this 21st day of December, 2022.

_____

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE