UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WILCO MARSH BUGGIES AND
DRAGLINES, INC.

VERSUS

WEEKS MARINE, INC.

CIVIL ACTION

NO. 20-3135

SECTION: "J"(1)

## ORDER & REASONS

Before the Court is a *Motion for Reconsideration* **(Rec. Doc. 162)** filed by
Defendant, Weeks Marine, Inc. ("Weeks") and opposed by Plaintiff, Wilco Marsh
Buggies & Draglines, Inc. ("Wilco"). (Rec. Doc. 172). The Court held oral argument on
this motion and allowed the parties to submit supplemental briefing. (Rec. Docs. 180,
185). Also before the Court is a *Motion for Leave to Withdraw and Substitute Expert
Witness* **(Rec. Doc. 182)**. Weeks has opposed this motion (Rec. Doc. 186), and Wilco
has filed a reply (Rec. Doc. 190). Having considered the motions and legal
memoranda, the record, and the applicable law, the Court finds that the motion for
reconsideration should be **GRANTED** and the motion to withdraw and substitute the
expert witness should be **DENIED.**

## FACTS AND PROCEDURAL BACKGROUND

The facts of this case have been recounted by this Court in previous orders.
Therefore, the Court will address only the procedural background relevant to the
instant motion for reconsideration. This Court previously denied Weeks' motion for
summary judgment. (Rec. Doc. 144). Weeks has now moved for reconsideration on
two main grounds: first, Weeks argues that the asserted claims of Wilco's '801 patent

were anticipated by the MudMaster vehicle, and that this Court was incorrect in not summarily holding that the MudMaster did not qualify as prior art, and second, that the Court erred in not considering the "Sham Affidavit Doctrine" in finding that the Harada and Zong machines did not meet the clear and convincing evidence standard in invalidating the '801 patent. Wilco does not contest most of Weeks' legal arguments and instead argues first that reconsideration is improper in this instance and second that the motion for reconsideration should be denied due to the genuine factual issues that remain regarding the MudMaster, Harada, and Zong machines that Weeks argues are prior art. After oral argument, the Court allowed both parties to submit supplemental briefing. Wilco's supplemental submission is in the form of a PowerPoint presentation (Rec. Doc. 183) while Weeks submitted both the PowerPoint they used at oral argument (Rec. Doc. 180) and a supplemental brief in response to Wilco's submission. (Rec. Doc. 185).

## LEGAL STANDARD

The Federal Rules of Civil Procedure do not expressly allow motions for reconsideration of an order. *Bass v. U.S. Dep't of Agric.*, 211 F.3d 959, 962 (5th Cir. 2000). However, the Fifth Circuit has consistently recognized that parties may challenge a judgment or order under Federal Rules of Civil Procedure 54(b), 59(e), or 60(b). *Southern Snow Manufacturing Co, Inc. v. Snowizard Holdings, Inc.*, 921 F. Supp. 2d 548, 563-564 (E.D. La. 2013); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), abrogated on other grounds by *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994). Rules 59 and 60, however, apply only

2

to final judgments. *Snowizard*, 921 F. Supp. 2d at 563-564. "Therefore, when a party seeks to revise an order that adjudicates fewer than all the claims among all of the parties, Federal Rule of Civil Procedure 54(b) controls." Id. (citing *Halena Labs. Corp. v. Alpha Scientific Corp.*, 483 F.Supp.2d 538 (E.D. Tex. 2007)). The difference between a Rule 60(b) and 59(e) motion is based on timing.  If the motion is filed within twenty-eight days of the final judgment, then it falls under Rule 59(e).  Id.; Fed. R. Civ. P. 59(e). However, if the motion is filed more than twenty-eight days after the final judgment, but not more than one year after the entry of judgment, it is governed by Rule 60(b).  Id.; Fed. R. Civ. P. 60(b). Rule 54 sets forth no such time limitations. Fed. R. Civ. Pro. 54(b); *Lightfoot v. Hartford Fire Ins. Co.*, No. 07-4833, 2012 WL 711842 (E.D. La. Mar. 5, 2012); *Snowizard*, 921 F. Supp. 2d at 563-564; *but see Zapata Gulf Marine Corp. v. Puerto Rico Marine Shipping Auth.*, 925 F.2d 812, 815 (5th Cir. 1991) (discussing a "no just reason for delay" exception).

The general practice of courts in this district has been to evaluate Rule 54(b) motions to reconsider under the same standards that govern Rule 59(e) motions to alter or amend a final judgment. *Snowizard*, 921 F. Supp. 2d at 565 (citing *Castrillo v. American Home Mortgage Servicing, Inc.*, No. 09-4369, 2010 WL 1424398, at *4 (E.D. La. April 5, 2010)(citations omitted)). Altering or amending a judgment under Rule 59(e) is an "extraordinary remedy" used "sparingly" by the courts. *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). A motion to alter or amend calls into question the correctness of a judgment and is permitted only in narrow situations, "primarily to correct manifest errors of law or fact or to present newly

3

discovered evidence." *Id.*; *see also Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). Manifest error is defined as "'[e]vident to the senses, especially to the sight, obvious to the understanding, evident to the mind, not obscure or hidden, and is synonymous with open, clear, visible, unmistakable, indubitable, indisputable, evidence, and self-evidence.'" *In Re Energy Partners, Ltd.*, No. 09-32957-H4-11, 2009 WL 2970393, at *6 (Bankr. S.D. Tex. Sept. 15, 2009) (citations omitted); see also *Pechon v. La. Dep't of Health & Hosp.*, No. 08-664, 2009 WL 2046766, at *4 (E.D. La. July 14, 2009) (manifest error is one that "'is plain and indisputable, and that amounts to a complete disregard of the controlling law'") (citations omitted).

Courts have noted that motions to reconsider or amend a final or partial judgment are "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of judgment." *Templet*, 367 F.3d at 478-79; *Snowizard*, 921 F.Supp.2d at 565. Also, such motions should not be used to "re-litigate prior matters that . . . simply have been resolved to the movant's dissatisfaction." *See Voisin v. Tetra Techs., Inc.*, No. 08-1302, 2010 WL 3943522, at *2 (E.D. La. Oct. 6, 2010). Thus, to prevail on a motion under Rule 59(e) or 54(b), the movant must clearly establish at least one of four factors: (1) the motion is necessary to correct a manifest error of law, (2) the movant presents newly discovered or previously unavailable evidence, (3) the motion is necessary in order to prevent manifest injustice, or (4) the motion is justified by an intervening change in controlling law. *Snowizard*, 921 F.Supp.2d at 565; *Schiller*, 342 F.3d at 567; *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005).

4

## DISCUSSION

As a preliminary matter, Wilco argues that Weeks has failed to demonstrate any of the narrow circumstances warranting reconsideration under Rule 54(b). (Rec. Doc. 172, at 7). Wilco argues that no new evidence has come to light and there has been no recent change in the law and that Weeks' motion merely rehashes previously rejected arguments. *Id.* at 8. However, Weeks' motion points out two legal issues the Court failed to consider which the Court will address in turn.

### A. The MudMaster as Prior Art

In denying summary judgment, this Court found that there was a genuine issue of material fact as to whether the MudMaster constituted prior art. The Court could not find that any of the documents submitted regarding the MudMaster constituted a single reference describing the claimed invention. (Rec. Doc. 144, at 16). The Court considered the MudMaster under the standard for a prior-art patent or printed publication as outlined in *Advanced Display Systems, Inc. v. Kent State University*, 212 F.3d 1272 (Fed. Cir. 2000) and focused on whether the four corners of any single document fully described each element of the MudMaster. However, Weeks asserts, and Wilco does not actually dispute that the Court should have instead considered the MudMaster machine itself as the alleged prior art.

Weeks argues that "the MudMaster™ vehicle is not being asserted as a prior-art patent or printed publication under 35 U.S.C. § 102. Rather, the prior-art reference under §102 is the MudMaster™ <u>product</u> that was publicly used and/or on sale in the United States prior to the '801." (Rec. Doc. 162, at 5) (emphasis in original). Weeks

5

further states that "the Court's Order denying summary judgment erroneously

conflates the prior-art reference (the MudMaster™ vehicle) with the evidence used

to establish the features of the prior-art reference." *Id.* at 6.

In support of its arguments, Weeks cites *Altera Corporation v. PACT XPP*

*Technologies, AG*, 2015 WL 3830982 at * 3 (N.D. Ca. June 19, 2015) in which the

California court stated that "multiple documents that describe a single prior art

device count as a single prior art reference. In this situation, it is the device that is

the asserted prior art; the documents are merely evidence to describe it." Weeks

also cites *Sonoscan, Inc. v. Sonotek, Inc.*, 936 F.3d 1261, 1263 (Fed. Cir. 1991) in

which the Federal Circuit held that the features of an alleged piece of prior art may

be established by "any relevant evidence, such as memoranda, drawings,

correspondence, and testimony of witnesses." The *Sonoscan* court also stated that

the fact that "the offered product is in fact the claimed invention may be established

by any relevant evidence, such as memoranda, drawings, correspondence, and

testimony of witnesses." *Id.* at 1263. In *RCA Corp. v. Data Gen. Corp.*, 887 F.2d

1056, 1060 (Fed. Cir. 1989), the Federal Circuit clarified that there is no

requirement for one single document to disclose every element of the claimed

invention when that invention was being offered for sale. Herein lies the key

distinction: when a *device* is being offered as prior art, the features of that device

may be proven by multiple pieces of evidence, but when the prior art is a patent or a

prior publication, then each element of the claimed invention must appear within

the four corners of that document. Because the MudMaster itself is being offered as

6

prior art, Weeks asserts that each piece of evidence offered may be used to establish its features. The Court erroneously applied the standard for a patent or prior publication when evaluating the MudMaster. Therefore, reconsideration is proper on this subject.

Wilco does not attempt to argue that Weeks' recital of the law in this case is incorrect. Instead, Wilco argues that *even if* the Court evaluates the MudMaster machine as one prior art reference, there are still genuine issues of fact that would preclude summary judgment. (Rec. Doc. 172, at 9). Wilco argues that there are genuine factual issues as to whether "(i) the paper references relied upon by Weeks Marine are related to the same MudMaster machine sold in 1980, and, (ii) whether those references disclose every limitation of the '801 patent." *Id.*

Turning first to the 1980 sale, Wilco argues that Weeks' evidence is too weak to support a finding that a sale occurred by clear and convincing evidence. Wilco states that

> Weeks relies exclusively on a purported sales contract and a DredgeMasters office memorandum. There are no witnesses who can testify regarding the sale. No person involved in DredgeMasters' purported sale of the machine will testify at trial. No person involved in Latina Export's purported purchase of the machine will testify at trial. Indeed, at trial, the only evidence the jury will hear regarding this purported sale is the deposition testimony of a former DredgeMasters employee, David Binkley, who was NOT employed by the company in 1980.

*Id.* at 11. (record citation omitted). Wilco then argues that even if Weeks can prove that the sale happened, there is not sufficient evidence to prove that the 1980 machine taught each and every limitation of the '801 patent. Indeed, as Wilco points

out, all of the documents Weeks relies on were created years after the purported sale, between 1983 and 1996. *Id.*

As in its opposition to summary judgment, Wilco again cites to *Sysmex Corp. v. Beckman Coulter, Inc.*, 2022 U.S. Dist. LEXIS 113561 (D. Del. 2022) which Wilco argues contains a very similar fact pattern. In *Sysmex*, the court granted the plaintiff (the patent holder's) partial motion for summary judgment as to the defendant's allegation that some of the claims of the patent at issue were invalid based on a prior sale. The court stated, assuming that the sale could be proven, "there was insufficient evidence from which a reasonable fact finder could conclude by clear and convincing evidence that the Advia 2120 that may have been on sale in the U.S. prior to the critical date actually anticipates or renders obvious the asserted claims at issue." *Id.* at *3. The only evidence related to the features of the Advia machine was one document printed more than a year after the purported sale date. *Id.* Wilco argues that, like in *Sysmex*, the documents produced by Weeks related to the 1980 sale are too far removed from the actual sale date to prove by clear and convincing evidence that the MudMaster is invalidating prior art.

In its reply memorandum to Wilco's opposition to summary judgment (Rec. Doc. 143), Weeks addressed Wilco's reliance on *Sysmex*. Weeks argues that *Sysmex* is different from the case at hand because

> In *Sysmex*, the issue was whether the defendant could rely upon a 2008 publication describing plaintiff's second, non-prior art device to establish the features of the patent owner's first, prior art device. The court held that the 2008 publication alone was insufficient to establish the first device's features. The court noted that the record was insufficient to conclude that the second device was materially identical to the first

8

device. *Id*. at *4. Unlike in *Sysmex*, Mr. David Binkley, the Vice President of DMI, testified as to the MudMaster's design, capabilities, and correlation between the MudMaster descriptions in the post-1980 DMI documents, such as the May 1993 Assembly Instructions, to the MudMaster units sold in 1980. (Dkt. 110-12, Binkley Dep. at 42:3-16; 70:23-71:4). Accordingly, no genuine issue of material fact exists that the MudMaster also qualifies as prior art due to the 1980 sale and the 1981 ConExpo public disclosure, and that the May 1993 Assembly Instructions are relevant for establishing the features of the MudMaster unit sold and publicly displayed in 1980/1981.

(Rec. Doc. 143, at 4). As laid out by Weeks, *Sysmex* dealt with a different issue than the issue concerning reliability of the documents relating to the 1980 sale. *Sysmex* addressed whether a publication describing a second device could be used to establish the features of the earlier purported prior art. The documentation in this case does not purport to be for a separate device as in *Sysmex*. Therefore, *Sysmex* is not dispositive.

Wilco is correct that the documentation Weeks has submitted regarding the 1980 sale was not created contemporaneously. However, Wilco does not actually present any argument to suggest the documentation is unreliable besides the fact that it was created after the sale and the fact that Mr. David Binkley, the current Vice President of  DredgeMasters International, Inc. ("DMI") which manufactured the MudMaster, did not work for the company in 1980. In denying summary judgment and Wilco's Motion to Strike and Exclude Evidence (Rec. Doc. 126), the Court already found that Mr. Binkley had personal knowledge of the record keeping system at DMI and could testify regarding the authenticity of the documents relating to the 1980 sale. (Rec. Doc. 144, at 11-13). Wilco does not raise any legitimate reason to doubt the applicability of the submitted evidence to the 1980

sale. The fact that Mr. Binkley can testify as to the record keeping practices of DMI and the fact that the evidence submitted by Weeks contains sufficient indicia of trustworthiness leaves this Court no legitimate reason to doubt that the evidence submitted applies to the 1980 sale.

Now, the Court can turn to the real factual issue surrounding the MudMaster: whether it is prior art that fully anticipates Wilco's '801 patent. Tellingly, Wilco does not actually attempt to argue in its opposition to Weeks' motion to reconsider that there are differences between the MudMaster and the '801 Patent. Instead, Wilco again focuses on its arguments concerning the reliability of the evidence relating to the 1980 sale. Even in its opposition to Weeks' initial motion for summary judgment, Wilco did not seriously attempt to argue that the MudMaster was different from the '801 Patent in any way. Instead, Wilco focused on arguing that the documentation relied on by Weeks was inadmissible, an argument which the Court rejected, and on arguing that the documents produced by Weeks could not constitute a singular reference, an argument which this Court now acknowledges to be legally unsound. By contrast, Weeks spends pages of its motion for summary judgment outlining each way in which the MudMaster vehicle anticipates each claim of the '801 patent.

Weeks must show by clear and convincing evidence that each claim of the '801 patent can be found in the MudMaster. Therefore, the Court will now evaluate the claims in turn. The first claim involves: "a vehicle comprising: a chassis; at least two pontoons supported by said chassis, wherein said pontoons provide sufficient

10

buoyancy such that the vehicle can float on water; a track system disposed on said pontoons and adapted to provide propulsion to the vehicle when moving on land or in water; a plurality of spuds connected to said chassis, wherein said spuds have a first position wherein said spuds extend below the bottom of said pontoons and a second position wherein said spuds do not extend below the bottom of said pontoons." (Rec. Doc. 110, at 15); (Rec. Doc. 183, at 18). Weeks argues that the MudMaster has a chassis made of two 16-foot-long connector pipes, two pontoons which are supported by the chassis, a tract system which can propel the MudMaster across soft terrain or while floating, and two spuds which can be deployed below the pontoons to anchor the vehicle. (Rec. Doc. 110, at 15-16).

Wilco disputes that the MudMaster discloses a chassis. In their supplemental PowerPoint, Wilco argues that there are no drawings showing connector pipes and no drawings identifying a trunnion support frame. (Rec. Doc. 183, at 22). In response, Weeks argues that there is no need to provide a drawing showing a connector pipe or trunnion frame. Weeks states that "the MudMaster Assembly Instructions provided ample disclosure for their expert, Dr. Hudson to conclude that a POSITA would understand the MudMaster to possess a chassis." (Rec. Doc. 185, at 11). This Court construed a chassis to mean "the supporting frame of a vehicle, exclusive of the body or housing" (Rec. Doc. 54). Wilco doesn't cite any support for the proposition that drawings are necessary and that the Court as well as Weeks' expert cannot rely on the Assembly Instructions to deduce that the MudMaster had a chassis. Wilco's supplemental PowerPoint is the first filing in which Wilco

attempts to actually assert that the MudMaster does not anticipate the '801 Patent. Wilco's four slides dedicated to Claim 1 are not enough to convince this Court that there is a genuine issue of material fact relating to the chassis of the MudMaster.

The same can be said for Wilco's arguments regarding Claim 12. Claim 12's limitations are: "a vehicle comprising a plurality of spud assemblies attached to said amphibious chassis; and equipment mounted to said amphibious chassis…wherein said plurality of spud assemblies . . . are adapted to laterally support the vehicle in the second operating mode." (Rec. Doc. 183, at 26). Wilco argues that the MudMaster does not disclose spuds that provide lateral support. *Id.* Weeks asserts that "the presence of two spuds spaced apart laterally on the MudMaster inherently provides side-to-side restraint of the MudMaster when floating as a matter of physics." (Rec. Doc. 110, at 26). Weeks also points to the testimony of David Binkley who testified that when both spuds were deployed during normal dredging operations, they would restrain the MudMaster from side-to-side movement. *Id.* Wilco has provided the Court with one slide regarding Claim 12 which does not contain any argument and merely contains small screenshots of the testimony of Mr. Binkley and Weeks' expert. (Rec. Doc. 183, at 26). Weeks has a high burden to meet in showing that prior art invalidates Wilco's patent. Weeks must show by clear and convincing evidence that the patent lacks novelty and is therefore invalid. *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986). However, Wilco has done nothing to refute Weeks' analysis that the MudMaster teaches the claims of the '801 patent. Wilco could have addressed Weeks' arguments

12

regarding the MudMaster in their opposition to Weeks' original motion for summary judgment, in their opposition to Weeks' motion to reconsider, at oral argument, or in the supplemental briefing opportunity provided by this Court. Rather, Wilco chose to focus on arguments concerning the reliability and admissibility of Weeks' evidence. A conclusory PowerPoint without citations to the record and without any analysis is not enough to defeat summary judgment. Having now decided that Weeks has submitted sufficient admissible documentation regarding the MudMaster which was the subject of the 1980 sale, and lacking any legitimate arguments on Wilco's part as to why the MudMaster does not constitute anticipating prior art, the Court finds that the '801 Patent lacks novelty and is therefore invalid.

### B. The Harada and the Zong

Additionally, even if the Court had not found that the MudMaster anticipates the '801 Patent, Weeks would also be entitled to summary judgment as to the Harada and the Zong because of the Sham Affidavit Doctrine. Weeks also argues that the Court erred in not considering the Sham Affidavit Doctrine in utilizing the testimony of William Bennett. Wilco uses Mr. Bennett's testimony in addressing the MudMaster as well as the Harada and the Zong, two other instances of purported prior art. Weeks argues that Wilco relied solely on Mr. Bennett's sworn declaration in attempting "to create a genuine issue of material fact with respect to anticipation of the asserted claims by both Harada and Zong." (Rec. Doc. 162, at 17). Weeks argues that Mr. Bennett's declaration contradicts his deposition testimony, and

therefore should not be used in deciding summary judgment. *Id. See S.W.S. Erectors v. Infax, Inc.,* 72 F.3d 489, 495-496 (5th Cir. 1996). Additionally, due to health issues, Mr. Bennett claims he is no longer able to testify at trial and has resigned from the case. Wilco has moved to substitute Mr. Bennett for another expert, Jason Kiddy, with the limitation that Mr. Kiddy would merely "step into the shoes" of Mr. Bennett and be bound by his prior opinions and testimony. (Rec. Doc. 182, at 1). As Weeks points out, this assertion is complicated by the fact that Mr. Bennett's declaration and deposition contain conflicting statements. (Rec. Doc. 186, at 8).

Weeks points to several statements in Mr. Bennett's declaration that the deem to be conflicting relating to the Harada:

| 10/17/22 Bennett Declaration (Rec. Doc, 127-11) | 61. The cleat design of Harada's tracks does not lend itself to traveling in muddy terrain contrary to the stated purpose of Harada…Harada's raft is unable to travel in marshland, wetland, or muddy terrain.<br>64. Furthermore, Harada is completely silent on the ability of the raft to travel on dry land, as recited in claims 1, 12, and 13. |
|---|---|
| 11/15/22 Bennett Deposition (Ex. 20) (Rec. Doc. 143-3) | **Ex. 20, Bennett Depo. at 129:1 to 129:7:**<br>1 Q. And it's your understanding that the<br>2 track system would provide propulsion on soft or<br>3 muddy ground, correct?<br>4 **A. Yes.**<br>5 Q. And the track system would also provide<br>6 propulsion on dry land as well, correct?<br>7 **A. It can drive on dry land, yes.** |

(Rec. Doc. 162, at 18, 19).

| 10/17/22 Bennett Declaration (Rec. Doc. 127-11) | 55. …During embedment of the spud, the bottom lead portion 41b of the spud will get hopelessly stuck in the mud and will be impossible to retrieve. A POSITA will have to completely re-design the spud embedment and retrieval |
|---|---|

| | |
|---|---|
| | assemblies, which is likely to take a considerable amount of time and experimentation.<br>57. Harada's application does not provide an enabling disclosure for the spuds to be retracted above the bottom of the pontoons, as claimed in Claims 1 and 12 of the '801 Patent. |
| 11/15/22 Bennett Deposition (Ex. 20) (Rec. Doc. 143-3) | **Ex. 20, Bennett Depo. at 134:2 to 134:11; 151:1 to 151:10:**<br>134<br>2 Q. So in your opinion you're interpreting<br>3 Figure 1 of the Harada reference as showing spuds<br>4 that would make contact with the ground when<br>5 traveling?<br>**6 A. Yes.**<br>7 Q. And do you believe a skilled artisan as<br>8 of 2003 would have known better than to make a<br>9 vehicle with spuds that are contacting the ground<br>10 when traveling on land?<br>**11 A. I think they should have, yes.**<br>* * *<br>151<br>1 Q. So with respect to Harada, is it your<br>2 opinion that a skilled artisan in looking at this<br>3 reference as a whole would have not located the<br>4 spuds above the bottom of the pontoon when trying<br>5 to make an actual functioning vehicle?<br>**6 A. I think a skilled artisan would have<br>7 located the spuds such that they would be where<br>8 they would not drag in the water -- drag in muddy<br>9 situations or in -- on land and may have used a<br>10 different design of the spuds.** |

*Id.* at 19, 20.

As to the Zong, Weeks makes similar arguments regarding the sham affidavit doctrine. Weeks points to the following testimony as an example of why Bennett's declaration regarding the Zong should be disregarded:

| | |
|---|---|
| 10/17/22 Bennett Declaration (Rec. Doc. 127-11) | 69. In effect, Zong acknowledges that the track propulsion in the water is inadequate and adds walking spuds to propel the raft during afloat operations. |

15

| | |
|---|---|
| | 71. …Any attempt at forward movement will cause the suction pipe 14 to drag on the ground, damaging the suction pipe, and any left, right, or reverse movement of the dredge will simply break off this pipe. |
| 11/15/22 Bennett Deposition (Ex. 20) (Rec. Doc. 143-3) | **Ex. 20, Bennet Depo. at 156:3-9, 169:6 to 170:1:**<br>156<br>3 Q. All right. And do you agree that these<br>4 track systems are adapted to provide propulsion<br>5 for the vehicle when moving on land or in water?<br>**6 A. I agree that there are tracks on those**<br>**7 pontoons that are intended to allow it to move on**<br>**8 land or in water, but I don't agree it can travel**<br>**9 on land.**<br>* * *<br>169<br>6 Q. So a person with an engineering degree<br>7 and five years of experience, if they're looking<br>8 at the Zong reference, they would know how to<br>9 construct an amphibious vehicle that takes into<br>10 account the overall teachings of the Zong<br>11 reference and do so such that you don't have a<br>12 water intake pipe that is dragging below the<br>13 pontoons from traveling on land, correct?<br>**14 A. Yes.**<br>15 Q. Correct? Do you agree?<br>**16 A. I agree that a person with an**<br>**17 engineering degree here should know better than to**<br>**18 do that.**<br>19 Q. Okay. And a person with an engineering<br>20 degree and five years experience dealing with<br>21 amphibious vehicles would be capable of creating<br>22 an amphibious vehicle that has some sort of a<br>23 retrieval system for a water intake pipe that you<br>24 wanted to use?<br>**25 A. I think a person -- there should be a**<br>**1 person who would do that.** |

The sham affidavit doctrine allows a district court to "refuse to consider statements made in an affidavit that are 'so markedly inconsistent' with a prior statement as to 'constitute an obvious sham.' *Winzer v. Kaufman County*, 916 F.3d

16

464, 472 (5th Cir. 2019) (citing *Clark v. Resistoflex Co., A Div. of Unidynamics Corp.,* 854 F.2d 762, 766 (5th Cir. 1988). In *Perma Research & Development Co. v. Singer Co.,* 410 F.2d 572 (2d. Cir. 1969), the case which originated the sham affidavit doctrine, the court noted that "[t]he deposition of a witness will usually be more reliable than his affidavit, since the deponent was either cross-examined by opposing counsel, or at least available to opposing counsel for cross-examination." *Id.* at 578. Affidavits, on the other hand, are typically drafted by counsel "whose familiarity with summary judgment procedure may render an affidavit less credible." *Jiminez v. All American Rathskeller, Inc.,* 503 F.3d 247 (3d Cir. 2007). However, the Fifth Circuit has also stated that "the sham affidavit doctrine prevents a party who *has been deposed* from introducing an affidavit that contradicts that person's deposition testimony without explanation." *Free v. Wal-Mart Louisiana, L.L.C.,* 815 Fed. Appx. 765, 766 (5th Cir. 2020). *See also Doe ex rel. Doe v. Dallas Independent School Dist.,* 220 F.3d 380, 386 (5th Cir. 2000) ("a plaintiff may not manufacture a genuine issue of material fact by submitting an affidavit that impeaches prior testimony without explanation.").

The sham affidavit doctrine is typically applied to instances when a subsequent affidavit contradicts earlier deposition testimony. However, here, the declaration at issue occurred prior to Mr. Bennett's deposition. Wilco argues, although without citing any supporting case law, that the sham affidavit doctrine is a misnomer and actually applies when any second form of sworn testimony contradicts the first. Wilco asserts that if the court finds sufficient inconsistencies between the affidavit and the

deposition, applying the sham affidavit doctrine here would result in disregarding Bennett's *second* testimony, his deposition, rather than his earlier expert report and sworn affidavit. (Rec. Doc. 172, at 13). Wilco also argues that the sham affidavit doctrine applies

> when witness provides subsequent testimony in response to a summary judgment filing. That did not happen here. Bennett's expert report was served on October 17, 2022; his deposition testimony was provided on November 15, 2022; Weeks Marine's summary judgment motion was filed later that same day, November 15, 2022. Neither Bennett's expert report or his deposition testimony were provided directly in response to Weeks Marine's summary judgment motion.

*Id.* at 14. Therefore, Wilco argues that, if anything, the deposition should be disregarded rather than the affidavit. Wilco also argues that Bennett's testimony does not rise to the level of a sham. Wilco is correct in asserting that not every inconsistency between two instances of sworn testimony rises to the level of a sham. However, Wilco's argument on this topic is brief, and Wilco does not attempt to explain how the inconsistencies pointed out by Weeks do not rise to the level of being a sham. Finally, Wilco argues that even if the Court were to accept Weeks' argument and exclude Bennett's expert report, that there would still be genuine issues of material fact relating to the Harada and Zong references which would preclude summary judgment.

Concerning Wilco's arguments about the applicability of the sham affidavit doctrine the Court is not persuaded that the true meaning of the doctrine would require the Court to exclude the later taken deposition rather than the earlier affidavit. The very rationale behind the rule is that depositions are more trustworthy

18

since they involve cross-examination. Mr. Bennett's affidavit (which is really just a sworn version of his expert report) is not more reliable merely because it occurred first. The Court rejects Wilco's contention that Mr. Bennett's deposition should be disregarded. As to Wilco's second argument that Mr. Kiddy should be substituted in place of Mr. Bennett and bound to his testimony, the Court is also not persuaded. Mr. Kiddy would be placed in the impossible position of sticking to testimony that contradicts itself, and Wilco is perfectly able to use Mr. Bennett's deposition in lieu of his live testimony at trial.

In their supplemental submission, Wilco presents a new argument regarding Mr. Bennett's testimony: that the Court "is not required to turn to expert testimony to determine whether the [sic] all of the limitations of a patent claim lie within the four corners of a prior art reference." (Rec. Doc. 183, at 7). Wilco cites *Versata Software, Inc. v. Internet Brands, Inc.*, 902 F. Supp. 2d 841 (E.D. Tex. 2012) in support of this argument. In *Versata*, the court held that prior art references need not necessarily be accompanied by expert testimony if they are easily understandable. *Id.* at 848. However, as Weeks points out in their supplemental submission, nowhere in *Versata* does the Court endorse ignoring expert testimony already in the record. (Rec. Doc. 185, at 4). Therefore, the Court is left with several conflicting arguments on Wilco's part on what to do with Mr. Bennett's testimony: disregard his deposition (a suggestion which the Court has already heartily rejected), allow a substitute expert to "step into his shoes" (a suggestion which would be impossible considering Mr. Bennett's conflicting opinions) or discount his expertise entirely (a suggestion

unsupported by law or reason). The Court cannot merely rely on Mr. Bennett's expert report as Wilco surely hopes. Therefore, the Court must **DENY** Wilco's reurged *Motion for Leave to Withdraw and Substitute Expert Witness* **(Rec. Doc. 182)**.

Turning then to some of the subjects of Mr. Bennett's testimony, the Harada and the Zong, the Court finds that these too represent examples of anticipatory prior art. In opposing Weeks' initial motion for summary judgment on the Harada and Zong, Wilco relied exclusively on Mr. Bennett's initial affidavit to establish a genuine issue of material fact. However, when looking at his deposition, Mr. Bennett largely agrees with Weeks' expert on issues pertaining to the Harada and Zong. As to the Harada, Mr. Bennett acknowledged in his deposition that a person of ordinary skill in the art ("POSITA") would understand that the Harada teaches each element of Claim 1. In denying summary judgment, this Court found it persuasive that Mr. Bennett opined that the track system on the Harada would become too clogged with mud to properly operate. (Rec. Doc. 144, at 17). However, in his deposition, Mr. Bennett admitted that the track system would be able to propel the Harada across soft, muddy ground. (Rec. Doc. 143-3 at 129:1). Mr. Bennett similarly admitted in regard to Claim 12 that a skilled artisan would know better than to make spuds that stuck out too far to make land travel impossible. *Id.* at 134:2-11).

Mr. Bennett also made similar statements regarding the Zong as to Claim 1, admitting that a POSITA would understand that the Zong teaches each element of Claim 1. Wilco's supplemental PowerPoint again presents no real arguments concerning either the Harada or the Zong and merely rehashes issues regarding

Claims 1 and 12 that Mr. Bennett already admitted in his deposition would not prevent either device from being enabling. Therefore, the Court finds that as with the MudMaster, Weeks has met its burden as to the Harada and Zong.

## <u>CONCLUSION</u>

Accordingly, **IT IS HEREBY ORDERED** that Weeks' Motion for Reconsideration **(Rec. Doc. 162)** is **GRANTED**.

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED** in favor of Defendant, Weeks Marine, Inc.

New Orleans, Louisiana, this 19th day of July, 2023.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

21