UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WILCO MARSH BUGGIES AND DRAGLINES, INC. | CIVIL ACTION |
| | NO. 20-3135 |
| VERSUS | SECTION: "J"(1) |
| WEEKS MARINE, INC. | |

## ORDER & REASONS

Before the Court is Defendant Weeks Marine, Inc.'s *Renewed Motion for Attorneys' Fees and Expenses Under 35 U.S.C. § 285* **(Rec. Doc. 216)**. Plaintiff Wilco Marsh Buggies & Draglines, Inc. has filed an opposition thereto. (Rec. Doc. 219). Weeks has also filed a reply. (Rec. Doc. 220). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED in part** and **DENIED in part**.

## FACTS AND PROCEDURAL BACKGROUND

The Court has detailed the facts of this case in prior Order and Reasons and will provide an abridged version here. In 2003, Wilco was granted the 801' Patent, which concerns an amphibious vehicle, also known as a marsh buggy, with excavation capabilities. (Rec. Doc. 1, at 3). The unique feature of the 801' Patent is that it adds spuds to the sides of the marsh buggy. (Rec. Doc. 32, at 2–3). These spuds utilize retractable pilings that extend to the water's bottom to stabilize the marsh buggy while operating in deeper water. *Id.*

After Wilco patented this technology, a Malaysian company, EIK Engineering ("EIK"), allegedly began selling copies of Wilco's amphibious vehicle in the U.S.

1

market. (Rec. Doc. 1, at 4-5). The copies allegedly contained Wilco's patented spud system. *Id.* Wilco struggled to litigate with EIK, so it instead sued Weeks, one of EIK's customers. (Rec. Doc. 32, at 5).

Wilco filed the instant suit in this Court in November 2020, seeking a declaration of infringement and damages. (Rec. Doc. 1). In November 2022, Weeks filed a motion for summary judgment, arguing (among other things) that the asserted claims are invalid as anticipated by a prior art amphibious excavator called the MudMaster, manufactured by a non-party company. This Court, on reconsideration, agreed with Weeks and granted summary judgment that the '801 patent was invalid as anticipated by the MudMaster. Wilco then appealed to the Federal Circuit, which affirmed this Court's decision in August 2025, finding that the MudMaster anticipated the 801' Patent's claims.

Weeks now seeks attorney's fees, which this Court has the power to award pursuant to 35 U.S.C. § 285. (Rec. Doc. 216). Wilco opposes. (Rec. Doc. 219).

## **LEGAL STANDARD**

35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." A case is exceptional when it "stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). District courts may determine exceptionality "in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* In deciding whether a case is

exceptional, district courts may consider various factors such as: "frivolousness, motivation, [and] objective unreasonableness . . ." *Id.* at 1756, n.6 (citing *Fogerty v. Fantasy*, 510 U.S. 517, 534 n. 19 (1994).

## DISCUSSION

As the patentholder, Wilco is entitled to a presumption of good faith in asserting its patent rights against Weeks in the form of a suit for infringement. *See Stone Basket Innovations, LLC v. Cook Medical LLC*, 892 F.3d 1175, 1180 (Fed. Cir. 2018); *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017). Weeks cites three cases for the proposition that this good faith presumption should be rebutted, but none of them are analogous to this case.

In *Raymond*, the patentee admitted that he had publicly sold the product at issue for years prior to seeking the patent. *Raymond v. Blair*, No. 09–5507, 2012 WL 1135911, at *4 (E.D. La. Apr. 4, 2012). The court recognized that under U.S. patent law "a person is not entitled to a patent for an invention if it was in public use or on sale in the United States for more than one year prior to the date of the patent application." *Id.* at n. 2. The court also found that the patentee was put on notice of potential invalidity when the issue was raised by defendants in their motion to dismiss. *Id.* Here, Wilco did not publicly sell its marsh buggies prior to seeking its patent. Further, Wilco was not put on notice like the plaintiff in *Raymond* because Weeks never filed a motion to dismiss on patent invalidity grounds. Thus, the Court finds this case to be unavailing.

3

In *Flowrider*, the Patent Trial and Appeal Board ("PTAB") invalidated the plaintiffs' patent during litigation. *Flowrider Surf, Ltd. v. Pac. Surf Designs, Inc.*, No. 15–1879, 2020 WL 907058, at *1 (S.D. Cal. Feb. 25, 2020). Here, the PTAB never invalidated Wilco's patent, and this Court decided to invalidate Wilco's patent only after initially denying Weeks' motion for summary judgment. (Rec. Doc. 144). Therefore, the Court finds this case to be distinguishable and unavailing.

In *Inventor*, the court found that the case was exceptional because the plaintiff continued pursuing a patent infringement claim despite the Supreme Court's decision in *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208 (2014), which held that the concept the plaintiff relied on for its patent was patent ineligible. *Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*, No. 14–448, 2016 WL 3090633, at *3 (D. Del. May 31, 2016) ("The case at hand is an exceptional case because following the *Alice* decision, [plaintiff']'s claims were objectively without merit."). Here there was no such controlling case law which would have put Wilco on notice that its patent was invalid. Thus, the Court finds this case to be unavailing. Accordingly, the Court continues its analysis with a presumption that Wilco was in good faith when asserting its patent rights.

Weeks argues that there are three separate starting points during which this case became exceptional and necessitated awarding attorney's fees. First, Weeks argues that the case was exceptional from the litigation's outset. (Rec. Doc. 216-1, at 11). Second, Weeks argues that this case became exceptional when Wilco received Weeks' invalidity contentions. *Id.* at 17. Third, Weeks argues that the case became

4

exceptional following Wilco's expert William Bennett's November 2022 deposition. *Id.* at 18.

*A. The Outset of Litigation*

Weeks argues that this case was exceptional from the moment Wilco filed suit. *Id.* at 16. Weeks contends that because Wilco possessed and reviewed the Harada and *Zong* references before filing suit, it could not reasonably believe that its patent was valid. *Id.*

Wilco argues that its belief in its patent validity was reasonable because the United States Patent and Trademark Office (USPTO) rejected challenges to Wilco's 801 patent based on the Harada and Zong references on three separate occasions. *Id.* at 13. As additional support for the reasonableness of Wilco's belief in its patent validity, Wilco notes that this Court originally denied summary judgment after considering the Harada and Zong references. *Id.* at 13–14.

Before Wilco filed suit, EIK thrice challenged Wilco's '801 Patent. In each challenge, EIK argued that the '801 Patent was obvious in light of the Harada and Zong references. Each time, the USPTO rejected these challenges. Weeks argues that this rejection was insufficient because the PTAB never addressed the merits of EIK's challenges based on Harada and Zong. (Rec. Doc. 216-1, at 10).

The Court disagrees. The PTAB declines to institute *inter partes* review of a patent "unless . . . there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). In this case, the PTAB declined to institute an *inter partes* review of the '801 Patent

5

because EIK failed "to identify with particularity the evidence that supports the grounds for each challenge to each claim." *EIK Engineering SDN. BHD., v. Wilco Marsh Buggies & Draglines, Inc.*, IPR2020-00344, Paper 7, at 2 (P.T.A.B. June 23, 2020). Thus, while the PTAB did not address the merits of EIK's challenge based on the *Harada* and *Zong* references, it nevertheless rejected EIK's challenge and found it unlikely that EIK would prevail. *Id.* Based on this rejection, the Court is unwilling to say that Wilco was unreasonable in believing its patent was valid. Further, that EIK failed to identify with particularity the reason why the Harada and Zong references rendered the patent invalid suggests that the '801 Patent's invalidity was not as obvious as Weeks contends. Equally telling is Weeks' failure to file a motion to dismiss, and the Court's initial refusal to grant summary judgment based on the Harada and Zong references. (Rec. Doc. 144, at 17–19). Accordingly, the Court finds that this case was not exceptional from the outset of litigation.

*B. Receipt of Invalidity Contentions*

Weeks next argues that the litigation became exceptional when it served Wilco its amended invalidity contentions containing the MudMaster, a spud-equipped amphibious vehicle that was sold before the grant of Wilco's '801 Patent. (Rec. Doc. 216-1, at 17). Weeks contends that Wilco could not have reasonably continued to pursue its patent infringement claim after receiving notice of the MudMaster. *Id.* at 18.

Wilco argues that its legal position continued to be reasonable despite receiving notice of the MudMaster. (Rec. Doc. 219, at 14). In support of its argument, Wilco

6

contends that Weeks continued to change its legal defense position on the MudMaster throughout the course of litigation, and that the Court initially denied summary judgment despite the MudMaster reference. *Id.*

The Court finds that Wilco's position became objectively unreasonable following disclosure of the MudMaster. The MudMaster anticipates every claim of the '801 Patent. Throughout the litigation, Wilco never disputed this. Instead, Wilco relied on a mischaracterization of the law and futile challenges to the admissibility of the MudMaster prior art as evidence. As the Court noted before granting summary judgment:

> Tellingly, Wilco does not actually attempt to argue in its opposition to Weeks' motion to reconsider that there are differences between the MudMaster and the '801 Patent. Instead, Wilco again focuses on its arguments concerning the reliability of the evidence relating to the 1980 sale. Even in its opposition to Weeks' initial motion for summary judgment, Wilco did not seriously attempt to argue that the MudMaster was different from the '801 Patent in any way. Instead, Wilco focused on arguing that the documentation relied on by Weeks was inadmissible, an argument which the Court rejected, and on arguing that the documents produced by Weeks could not constitute a singular reference, an argument which this Court now acknowledges to be legally unsound.

*Wilco Marsh Buggies and Draglines, Inc. v. Weeks Marine, Inc.*, 2023 WL 4624744, at *4 (E.D. La. Jul. 19, 2023). Whatever merit Wilco had in asserting its patent disappeared following disclosure of the MudMaster. Even in its opposition to the instant motion, Wilco does not argue that it ever had reason to believe that the MudMaster differed from the '801 Patent in any meaningful way.

7

Wilco's only arguments in support, that Weeks changed its legal position on the MudMaster throughout the course of litigation, and that the Court initially denied summary judgment, are unavailing. In its first amended final invalidity contentions, Weeks disclosed various MudMaster publications as well as a sale of the MudMaster product prior to the '801 Patent. (Rec. Doc. 76). From that point on, Weeks consistently argued that the MudMaster anticipated every claim of the '801 Patent, whether it be the 1980 MudMaster sale this Court relied on in granting summary judgment, or the 1993 MudMaster sale the appellate court relied on in affirming that decision. While Weeks' expert changed his original position on what constituted the MudMaster's chassis, the Court does not find this distinction to be significant.

Wilco's reliance on this Court's original denial of summary judgment is also misplaced. The Court initially denied summary judgment based on Wilco's mischaracterization of the law. In first opposing summary judgment, Wilco incorrectly argued that Weeks could not use multiple references of the MudMaster to demonstrate that the '801 Patent was invalid by anticipation because it violated "the fundamental rule that a single reference must disclose every element of the challenged patent." (Rec. Doc. 127, at 17). The Court relied on this faulty argument and mischaracterization of the law when it initially denied summary judgment. *Wilco Marsh Buggies and Draglines, Inc. v. Weeks Marine, Inc.*, 2022 WL 17830468, at *7 (E.D. La. Dec. 21, 2022). However, in opposing Weeks' motion for reconsideration, Wilco abandoned this argument, conceding that the Court should have instead

8

considered the MudMaster machine itself as prior art and looked to other references as evidence to describe it. *Wilco*, 2023 WL 4624744, at *2. The Court found the law's correct application dispositive and granted summary judgment in Weeks' favor.

In sum, Wilco has not argued that the MudMaster differs from the '801 patent in any meaningful way. The Court initially denied summary judgment because Wilco mischaracterized the law. Wilco cannot rely on this Court's mistake as evidence of the strength of its argument. Accordingly, the Court finds that Wilco's position became objectively unreasonable and exceptional following the MudMaster's disclosure.

## II. Attorney's Fees

Having found Wilco's actions to be exceptional, the Court now determines a reasonable award of attorney's fees. In the Fifth Circuit, a two-step method determines the reasonable award of attorney's fees. *Combs v. City of Huntington, Texas*, 829 F.3d 388, 391 (5th Cir. 2016). First, the court calculates the lodestar, the reasonable number of hours for the work multiplied by the prevailing community rate. *Id.* (citation omitted). This calculation yields a "strong presumption" of the reasonable fee. *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1044 (5th Cir. 1999) (citing *City of Burlington v. Dague*, 505 U.S. 557). Second, the court may exercise its discretion and adjust the lodestar based on the *Johnson* factors. *Rodney v. Elliot Sec. Sols., L.L.C.*, 853 F. App'x 922, 924 (5th Cir. 2021); *Johnson v. Georgia Hwy, Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974). These factors include:

(1) the time and labor required;

(2) the novelty and difficulty of the issues presented;

(3) the skill required to perform the legal skills properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee was fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the result obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the undesirability of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Johnson*, 488 F.2d at 717–19.

### A. *The Number of Hours Reasonably Spent*

The Court must first determine if the hours requested by Weeks' counsel were reasonable considering the nature of the case and the work performed. The party seeking fees bears the burden of proving the reasonableness of the requested hours. *Mota v. Univ. of Tex. Houston Health Science Ctr.*, 261 F.3d 512, 528 (5th Cir. 2001) (citation omitted).

Here, Weeks requested $970,183.55 in attorneys' fees for 2716.5 hours spent in litigating this case after notifying Wilco about the MudMaster. Wilco fails to offer any opposition to Weeks' calculation of attorney's fees, including no analysis of Weeks'

submitted time sheets. This litigation continued for over three years following Weeks' filing of its first amended invalidity contentions disclosing the MudMaster. (Rec. Doc. 1). The docket reflects substantial motion activity on behalf of both parties after this notice, including two motions for summary judgment, oral arguments, and an appeal to the federal circuit. (Rec. Doc. 144; Rec. Doc. 162; Rec. Doc. 179; Rec. Doc. 213). Wilco has limited its request to fees incurred by the six primary attorneys who worked on this case and removed 421.5 billable hours incurred by paralegals, librarians, and additional attorneys. (Rec. Doc. 216-1, at 19). Accordingly, the Court finds that Weeks' billable hours calculation is reasonable.

### B. Reasonableness of the Hourly Rate

Attorney's fees should be calculated at the "prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). As with the reasonableness of hours spent, the burden of proving that the requested rate aligns with the prevailing market rates falls on the party seeking the attorney's fees. *Wheeler v. Mental Health & Mental Retardation Auth. of Harris County, Tex.*, 752 F.2d 1063, 1073 (5th Cir. 1985).

Here, Weeks seeks fees at hourly rates ranging from $284–$444. (Rec. Doc. 216-1, at 22). Weeks asserts that these rates reflect a discounted rate charged by Weeks' counsel, Jones Walker LLP, due to Weeks' longstanding attorney-client relationship with Jones and due to Weeks eliminating numerous entries billed and

11

paid by Weeks to avoid Wilco's objections and facilitate a prompt determination of a reasonable attorneys' fees award. *Id.*

In support of reasonableness, Weeks points to the prevailing rates charged by attorneys in the Eastern District of Louisiana for complex litigation. *Id.* Weeks also presents the average rate charged for intellectual property attorneys, considering their experience and the size of their firm. *Id.* at 23.

Based on the uncontested data, the average rate of awarded attorney's fees in this district from 2018–2023 range from $259–$450, which is proximate to the rate charged and paid by Weeks. This rate becomes even more reasonable when considering data from the American Intellectual Property Association's *2023 Report of the Economic Survey*, which shows that the average rate for intellectual property attorneys with 15–24 years of experience is $545, and the average rate for attorneys with 25 or more years of experience is $610. Am. Intell. Prop. L. Ass'n, *2023 Report of the Economic Survey* 28 (2023). Further, when the law firms are comprised of more than 100 attorneys, the average billing rate for intellectual property attorneys rises to $650. *Id.* at 102. Based on the billable hours presented by Weeks, the legal defense work in this case was performed by attorneys with experience ranging from 4–35 years, with the bulk of the work performed by the more experienced attorneys. (Rec. Doc. 216-1, at 22). Jones has over 350 attorneys throughout its fifteen offices. *Id.* at 23. Wilco does not oppose the reasonableness of Weeks' proffered attorneys' fees. Accordingly, the Court finds that Weeks has presented reasonable rates for attorneys

of comparable skills within the community. The lodestar, therefore, is set at $970,183.55.

### C. Application of the Johnson Factors

Although there is a strong presumption that the lodestar figure is reasonable, the Court still considers the *Johnson* factors before assessing a final quantum of attorney's fees. *Heidtman*, 171 F.3d at 1043. This consideration need not be "meticulously detailed," yet all twelve factors must be clearly applied to the lodestar figure. *Saizan v. Delta Concrete Products Co. Inc.*, 448 F.3d 975 (5th. Cir. 2006). If a *Johnson* factor has already been considered in the calculation of the lodestar figure, the Court need not contemplate further adjustments on that basis. *Id.*

Here, the Court notes that neither party argues for an upward or downward adjustment of the lodestar figure pursuant to the *Johnson* factors. Still, after careful consideration of each of the *Johnson* factors, the Court finds there is no further need to adjust the lodestar figure.

#### (1) Time and Labor Required

This factor was already accounted for in the Court's consideration of the lodestar figure.

#### (2) Novelty and Difficulty of the Issues Involved

The Court finds that the legal issues presented in this case were not novel. However, Wilco's initial misrepresentation of the law regarding prior art references added legal difficulty to this action.

13

### (3) Skill Required

The Court finds that Weeks' counsel skillfully handled Wilco's litigation behavior to obtain a positive result for Weeks. This supports the lodestar figure.

### (4) Preclusion of Other Employment

Weeks' counsel has not provided any evidence that this case forced them to turn away other potential clients and cases due to the time and resources required.

### (5) Customary Fee

This factor was already accounted for in the Court's consideration of the lodestar figure.

### (6) Whether Fee is Fixed or Contingent

Weeks paid Jones a fixed fee based on the rates discussed. There is no risk of Jones' nonpayment. This factor cuts against any fee enhancement, and weighs in favor of the current lodestar figure.

### (7) Time Limitations Imposed by the Client or Circumstances of the Case

This factor presents no clear application to this case.

### (8) Amount Involved and Results Obtained

The degree of success obtained is the most important *Johnson* factor. *Abner v. Kansas City So. Ry. Co.*, 541 F.3d 372, 376–77 (5th Cir. 2008) (citing *Johnson v. Ga. Hwy. Exp.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). Therefore, the Court finds that Weeks' counsel achieved complete success for their clients, and the lodestar figure reflects an adequate level of compensation commensurate with that success.

### (9) Experience, Reputation, and Ability of Attorneys

This factor was already considered in the Court's calculation of the lodestar figure.

### (10) Undesirability of the Case

This factor presents no clear application to this case.

### (11) Nature and Length of the Professional Relationship with Client

This factor is intended to compensate attorneys who discount their fees to longstanding clients. *See Johnson*, 488 F.2d at 719. Weeks contends that Jones discounted its standard rate due to Jones' longstanding relationship with Weeks. Still, Weeks provides no proof of this longstanding relationship, and Weeks does not request that the lodestar figure be adjusted upward pursuant to the *Johnson* factors. (Rec. Doc. 216-1, at 24). Thus, the Court will not apply this factor.

### (12) Awards in Similar Cases

This factor is neutral because the Court already considered attorney's fees awards in this district when calculating the lodestar figure.

Because it appears that none of the *Johnson* factors warrants an upward or downward adjustment from the lodestar amounts, the Court finds that the final lodestar figure of $970,183.55 is the correct award in this case.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the motion is **GRANTED in part** and **DENIED in part**. This case became exceptional under 35 U.S.C. §285 when Weeks notified Wilco of the MudMaster on June 20, 2022.

**IT IS FURTHER ORDERED** that Wilco shall pay Weeks' attorneys' fees in the amount of $970,183.55 for 2716.5 hours expended between June 21, 2022 to August 19, 2025.

New Orleans, Louisiana, this 5th day of March, 2026.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE